**Richmond**

LOW SPLINT COAL COMPANY, INC., ET AL.

V.

GLEN D. BOLLING

Record No. 820587.

December 3, 1982.

Present: All the Justices.

Thomas R. Scott, Jr. (Street, Street, Street, Scott & Bowman, on brief), for appellants.
Gerald F. Sharp for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the dispositive question for our determination is whether the Industrial Commission erred in making an award requiring the employer of a disabled claimant to provide for him an

improved entrance ramp at the rear of his residence and modifications to his bathroom.

While employed by Low Splint Coal Company, Inc., the claimant, Glen D. Bolling, was injured in a 1978 mining accident which rendered him a paraplegic confined to a wheelchair. His employer and its insurance carrier, Old Republic Insurance Company (collectively, the employer), agreed that the accident was compensable, and the Commission awarded Bolling temporary total disability payments and medical benefits for as long as necessary. Additionally, by order entered June 25, 1979, the Commission made an award to Bolling of $1,500, pursuant to a compromise agreement, for various expenses to that date.

In September of 1981, Bolling filed his application for "modifications to claimant's home and construction of suitable ramp system." A deputy commissioner conducted a hearing on the application on November 19, 1981.

The evidence is uncontradicted. At the time of the industrial accident, Bolling lived with his wife and two daughters in a "double-wide" mobile home in Wise County. About six weeks after the accident, Bolling's brother constructed without charge a plywood ramp to provide ingress and egress for Bolling by wheelchair to and from the rear entrance of the dwelling. With assistance, Bolling had been utilizing this ramp since his return home, but the ramp had no guardrails and some of the plywood had deteriorated. He wished to install an improved concrete ramp that he could use without assistance.

Because of the small size of the bathroom, Bolling could not turn his wheelchair around inside, although he could wheel himself into the room either forward or backward. He sought to have the bathroom enlarged and handrails installed so that he could shut the bathroom door and use the facilities without assistance and without embarrassment.

Bolling's physician, Dr. Richard Whitehill, testifying by deposition, described the claimant's condition when he last saw him on April 11, 1979. Dr. Whitehill was unable to express an opinion as to the adequacy of Bolling's physical surroundings and said that he would defer to a rehabilitation specialist on that question.

C. Mack Cain, a rehabilitation counselor of the Virginia Department of Rehabilitative Services, testified for the claimant, over the employer's objection, that it was unsafe for Bolling to use the present ramp unassisted because the wood in the ramp was

"rotten," the incline was too steep, and the ramp did not have a guardrail or a curb. Cain also was of opinion that the bathroom was too small, and without handrails Bolling could not move without assistance from his wheelchair to the commode or the tub. Two bids had been obtained for making the improvements for which Bolling had applied, one in the amount of $25,868, which Cain felt was exorbitant, and the other in the amount of $15,350. Cain recommended that the improvements be made.

The deputy commissioner, by opinion dated January 4, 1982, ruled that in enacting Code § 65.1-88,[1] entitling claimant to lifetime medical and vocational rehabilitation services, the General Assembly contemplated the "very situation" presented by the facts in this case. Accordingly, the deputy commissioner entered an award directing the employer to assume responsibility for payment of the sum of $15,350 to the low bidder for the structural modifications that Bolling sought.

Upon review, the full commission, by opinion dated March 5, 1982, approved the deputy commissioner's findings of fact and conclusions of law and agreed that the improvements were required under § 65.1-88 "providing for medical attention and vocational rehabilitation." The opinion further stated that the new ramp would be necessary to enable Bolling to go "to and from medical attention outside his house." The Commission, however, modified the deputy commissioner's requirement that the employer pay the sum of $15,350 for the improvements by directing

---

[1] Code § 65.1-88 (Repl. Vol. 1980), applicable in this case, provided in pertinent part:

As long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention, and where such accident results in the amputation of an arm, hand, leg or foot or the enucleation of an eye or the loss of any natural teeth or loss of hearing, the employer shall furnish prosthetic appliances, proper fitting thereof, and training in the use thereof, as the nature of the injury may require, and the employee shall accept the attending physician, unless otherwise ordered by the Industrial Commission, and in addition, such surgical and hospital service and supplies as may be deemed necessary by the attending physician or the Industrial Commission.

The employer shall repair, if repairable, or replace dentures, artificial limbs or other prosthetic devices damaged in an accident otherwise compensable under workmen's compensation, and furnish proper fitting thereof.

The employer shall also furnish or cause to be furnished, at the direction of the Industrial Commission, reasonable and necessary vocational rehabilitation training services.

that the employer "promptly provide" such facilities or be responsible for the reasonable costs thereof as secured by the claimant. We granted the employer an appeal from this award.

On appeal, the employer argues that the language of § 65.1-88 cannot properly be read to include the structural improvements in question as either "other necessary medical attention" or "reasonable and necessary vocational rehabilitation training services." We agree.

█ The interpretation of § 65.1-88 made by the deputy commissioner and approved by the full commission was based upon the long-established principle that the Workmen's Compensation Act is to be liberally construed for the benefit of employees and their dependents. *See, e.g., Byrd* v. *Stonega Coke, Etc., Co.,* 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944). Liberal construction, however, may not be used to amend a statute by changing the meaning of the statutory language. *Faulkner* v. *Town of So. Boston,* 141 Va. 517, 524, 127 S.E. 380, 382 (1925).

█ The first paragraph of § 65.1-88 requires the employer to provide a physician and "such other necessary medical attention" as the employee's injury may require. The employee is required to accept the physician, unless otherwise ordered by the Industrial Commission, and "such surgical and hospital service and supplies as may be deemed necessary by the attending physician or the Industrial Commission." If the accident results in amputation or loss of specified parts of the body, the employer must furnish prosthetic devices and training in the use of such appliances; Bolling's injury was not one of those specifically enumerated. Thus, Bolling is entitled to free medical attention, including diagnosis, treatment, hospital care, and surgical procedures.

We have held that subject to certain conditions "other necessary medical attention" may include "nursing care at home given a disabled employee by the spouse." *Warren Trucking Co.* v. *Chandler,* 221 Va. 1108, 1116, 277 S.E.2d 488, 493 (1981). Bolling asks us to approve a broader reading of "medical attention" in this case. The construction work which Bolling argues is compensable, however, is beyond the plain meaning of the statute.

The term "attention," as used here, means "observant care." Webster's Third New International Dictionary 141 (1971). "Care" connotes "supervision, . . . responsibility for or attention to safety and well-being (under a doctor's care)." *Id.* at 338. To furnish care is to "provide for or attend to needs or perform neces-

sary personal services (as for a patient or a child)." *Id.* Finally, the word "service" has been defined as "useful labor that does not produce a tangible commodity—usu[ally] used in pl[ural] (. . . physicians perform services although they produce no goods)." *Id.* at 2075.

Thus, the term "attention," as commonly understood, does not embrace structural alterations. Furthermore, we note that the statute declares that *"medical* attention" is to be provided. (Emphasis added). The construction of a ramp and modification of a bathroom are not *medical* care, supervision, or services.

Cases from other jurisdictions construing similar terminology are instructive. In *Spiker v. John Day Co.,* 201 Neb. 503, 270 N.W.2d 300 (1978), an employee was held not entitled to an award for the cost of adding a room to his home to enable him to be cared for at home. The cost of an elevator has been denied as not being medical in nature. *Savaria v. DiSano,* 118 R.I. 357, 373 A.2d 820 (1977). A special chair recommended by the employee's physician was held not to come within the meaning of "medical services." *In re Compensation of Smith,* 54 Or. App. 261, 634 P.2d 809 (1981). In *Nallan v. Motion Picture Studio Mechanics Local 52,* 49 A.D.2d 365, 375 N.Y.S.2d 164 (1975), *rev'd on other grounds,* 40 N.Y.2d 1042, 360 N.E.2d 353, 391 N.Y.S.2d 853 (1976), a specially equipped automobile was held not to be a "medical apparatus or device."

Indeed, the Industrial Commission itself in the past has construed "other necessary medical attention" not to include a wheelchair lift, *Windel v. Hercules, Inc.,* 53 O.I.C. 392 (1971), or a specially equipped camper-type truck, *Fox v. Goins Enterprises, Inc.,* 56 O.I.C. 112 (1975), *appeal refused,* 216 Va. 1xx (1976). We hold that "other necessary medical attention" is limited to services and does not include the structural renovations and modifications sought by Bolling.

■ The improvements also are not included as "reasonable and necessary vocational rehabilitation training services" under the third paragraph of § 65.1-88. This paragraph was added by amendment to the Act in 1975. Acts 1975, c. 280. Here again, as we have already demonstrated, structural additions and modifications to a building are not "services" as that term is generally defined. The kind of services within the meaning of the paragraph is assistance by competent teachers or therapists to enable a dis-

abled employee to learn a new skill to prepare him for reemployment.[2]

■ The evidence shows that Bolling, after utilizing the services of the rehabilitation facilities at the University of Virginia Hospital and at the Woodrow Wilson Rehabilitation Center, was not engaged in vocational rehabilitation training subsequent to his return home in 1979. Construction of the proposed new ramp and bathroom facilities is neither vocational rehabilitation training nor the furnishing of vocational rehabilitation training services.

■ That Bolling was grievously injured in undeniable. No one can fail to sympathize with him and admire his desire to achieve independence in entering and leaving his residence and in using the bathroom facilities therein. Nevertheless, the employer is responsible for providing only those services and those prosthetic appliances specifically delineated in the statute. If Bolling should find it advisable or convenient to find another house with easier means of access, his employer could not be held responsible for providing such a residence. If Bolling should find it expedient to relocate to an apartment with elevator service, the employer could not be required to provide this for him.

In this legislation the General Assembly balanced the competing needs of employers and employees and enacted a statutory scheme which limits the employee's recovery as compared to full tort damages, but guarantees the injured workman greater security in that to obtain compensation he need not prove negligence and counter traditional defenses such as contributory negligence and assumption of the risk. *Fauver v. Bell,* 192 Va. 518, 521-22, 65 S.E.2d 575, 577 (1951). We will not interfere with that far-reaching compromise by requiring the employer to provide compensation for claims which do not come within the statutory language.

Accordingly, we will reverse the award of the Industrial Commission and dismiss Bolling's application.

*Reversed and dismissed.*

---

[2] "Vocational" means "of, relating to, or being in training in a specific skill or trade . . . ." Webster's Third New International Dictionary 2561 (1971). "Rehabilitation" is "the process of restoring an individual (as . . . a disaster victim) to a useful and constructive place in society through some form of vocational . . . or therapeutic retraining . . . ." *Id.* at 1914.