PATRICIA SUE YEARGAIN

v.

DANIEL INTERNATIONAL, et al.

No. 0976-88-2

Decided September 12, 1989

COUNSEL

Patricia Sue Yeargain, pro se.

Randolph P. Tabb, Jr. (Taylor, Hazen & Kauffman, on brief), for appellees.

OPINION

KEENAN, J.—Patricia Sue Yeargain appeals from a decision in which the Industrial Commission held that her educational program did not qualify as a "reasonable and necessary vocational rehabilitation training service" under Code § 65.1-88. We affirm the commission's decision based on our finding that Yeargain's program of study is not a reasonable and necessary vocational rehabilitation training service as defined by the Supreme Court in *City of Salem v. Colegrove*, 228 Va. 290, 321 S.E.2d 654 (1984).

Yeargain, who is now thirty-six years of age, sustained a compensable injury to her left knee on April 16, 1983, during her employment with Daniel International (Daniel). Yeargain had been employed as a welder with Daniel for eighteen months when the accident occurred. She was earning $544 a week. At this rate, Yeargain would have earned an annual salary of over $28,000 had she remained on the job. She is currently receiving compensation benefits of $234.67 a week for temporary partial work incapacity.

In July 1983, Yeargain had surgery performed on her knee. In February 1984, she was examined by Dr. Richard Bernard Caspari, who reported that she suffered from a "degenerative joint disease involving the femoral condyle and tibial plateau." Dr. Caspari found a permanent partial disability of fifty percent of the lower extremity and stated that Yeargain was unable to perform a job involving lifting more than fifteen pounds, prolonged standing, stair climbing, squatting, kneeling or running. In his report of December 14, 1987, Dr. Caspari stated that Yeargain will "have continued difficulty in the future with the progression of her de-

generative arthritis, and will require future surgery up and to and including a total knee replacement at a later age."

On her own initiative, Yeargain enrolled at the John Tyler Community College in the winter of 1984. She took a course in blueprinting to learn this skill for construction work. After being informed that her knee injury would prevent her from pursuing a career in construction, she changed her area of study to engineering. Shortly thereafter, she transferred to J. Sargeant Reynolds Community College. Due to the course schedule there, she found it necessary to change her field of study once again. Yeargain graduated from J. Sargeant Reynolds Community College in the spring of 1987 with an associates degree in business administration.

In the fall of 1987, Yeargain enrolled in the University College at the University of Richmond. Her schedule consisted of classes in marketing, western civilization and the American revolution. She currently is pursuing a bachelors degree in applied studies. Yeargain testified that after completing this degree, she plans to find employment in the area of public administration with the state or a county. She hopes eventually to become a county administrator.

While pursuing her studies, Yeargain has continued to work full-time as a receptionist and clerical worker. She attends school part-time, taking three courses per semester. Yeargain testified that at this rate, she should complete her degree requirements by December 1990. She has already completed sixty of the one hundred and twenty credit hours required to obtain her degree.

On appeal, Yeargain argues that her proposed program of study is a "reasonable and necessary vocational rehabilitation training service," as contemplated by Code § 65.1-88. Thus, she contends that Daniel should be required to pay her remaining tuition and costs at the University of Richmond. Daniel argues that Yeargain's schooling does not rise to the dignity of a "specific skill or trade" as required by *Colegrove*, and therefore, that Yeargain is responsible for these payments.

The issue whether Yeargain's proposed educational program is a "reasonable and necessary vocational rehabilitation training service" authorized by Code § 65.1-88 is a mixed ques-

tion of law and fact. *Colegrove*, 228 Va. at 293, 321 S.E.2d at 656. There are two purposes underlying vocational rehabilitation training: "to restore the employee to gainful employment and to relieve the employer's burden of future compensation." *Id.* at 294, 321 S.E.2d at 656. The Supreme Court has defined the term "vocational" in Code § 65.1-88 as relating to "training in a *specific skill or trade*" and "rehabilitation" as "the process of restoring an individual. . . to a useful and constructive place in society through some form of vocational . . . or therapeutic retraining. . . ." *Id.* (quoting *Low Splint Coal Co. v. Bolling*, 224 Va. 400, 407 n.2, 297 S.E.2d 655, 668 n.2 (1982)) (citations omitted). Thus, the type of services contemplated by the legislature in enacting Code § 65.1-88 are those designed to assist a disabled employee in learning a new skill to prepare her for reemployment. *Colegrove*, 228 Va. at 294, 321 S.E.2d at 656.

In *Colegrove*, the claimant suffered a compensable injury which precluded him from returning to any work involving significant lifting, bending or stooping. He enrolled on his own initiative in a program of study in computer science at Virginia Western Community College. Ultimately, he transferred to Virginia Polytechnic Institute and State University where he pursued a four year degree in accounting. The claimant requested payment of tuition for the four years, transportation and other expenses. In denying him compensation benefits under Code § 65.1-88, the Court held that the four year program of college education embarked upon by the claimant fell far outside of the terms of the statute. *Id.* We find that Yeargain's program of study likewise falls beyond the range of benefits contemplated as reasonable and necessary vocational rehabilitation training services. As Yeargain's course schedule reveals, the degree program in applied studies consists of courses that are normally considered part of a general liberal arts education. Rather than retraining her for a specific skill or trade, the program which Yeargain proposes "undertakes to expand the claimant's occupational horizons to embrace a wide range of business, industrial, and professional callings." *Id.* Further, the economic benefits that Yeargain claims Daniel would derive from the program are purely speculative as the record is silent regarding both her salary potential and her ability to be employed in her chosen field.

Although we affirm the commission's decision based on *Colegrove*, we note that the issue presented in this appeal raises a question for possible legislative consideration. Undoubtedly, there will be future situations where a claimant will be able to prove that a four year college education, as opposed to a technical or trade school program, is both reasonable and necessary and meets the goals of Code § 65.1-88.

Notwithstanding this fact, since the proposed program does not meet the requirements of Code § 65.1-88, as defined by the Supreme Court in *Colegrove*, we affirm the commission's decision.

*Affirmed.*

Barrow, J., concurred.

Benton, J., dissenting.

Only by the most narrow and cramped reading of *City of Salem v. Colegrove*, 228 Va. 290, 321 S.E.2d 654 (1984), can one reach the conclusion, as did Professor Larson, that only "[o]ne state, Virginia, . . . take[s] the position that college education is not within the boundaries of reasonable and necessary vocational rehabilitation." 2 A. Larson, *Workmen's Compensation Law* § 61.22 (1987). Although the Supreme Court in *Colegrove* used language which at first blush suggests that accounting is not a "specific skill or trade" and further intimates that a college education is "outside the range of benefits provided by the General Assembly," *id.* at 294, 321 S.E.2d at 656, I believe that a fair reading of *Colegrove* discloses that the holding was limited solely to the determination that "[t]he four-year program of college education embarked upon by [Colegrove] in this case . . . fails to meet the 'reasonable and necessary' standard of Code § 65.1-88 when any fair consideration is given to 'the relative costs and benefits to be derived from the program.'" *Id.* In my view, this record demonstrates that Patricia Sue Yeargain's program of study meets that standard.

Although not necessary to its holding, the Supreme Court in *Colegrove* used the definition of "vocational" found in *Low Splint Coal Co. v. Bolling*, 224 Va. 400, 406 n.2, 297 S.E.2d 665, 668 n.2 (1982). That definition is one of several contained in Webster's Third New International Dictionary (1971). "Voca-

tional" is also defined by Webster's to be "of, relating to, or concerned with a vocation." *Id.* at 2561. "Vocation" means "the membership of a particular occupational group: the persons engaged in a field of business, profession, or trade." *Id.* Nothing in the workers' compensation statute requires that we give the term "vocational" the narrowest of meanings. Indeed, it is precisely because "the Workmen's Compensation Act is highly remedial and should be liberally construed in favor of the workman," *Barker v. Appalachian Power Co.*, 209 Va. 162, 166, 163 S.E.2d 311, 314 (1968), that we are required to accord "vocational" the meaning which includes the broad range of occupational groups, not just the meaning limited to manual labor.

In 1989 the General Assembly amended Code § 65.1-88(A)(3) by adding the second and third sentence. Code § 65.1-88(A)(3) now reads:

The employer shall also furnish or cause to be furnished, at the direction of the Industrial Commission, reasonable and necessary vocational rehabilitation training services. In the event a dispute arises, any party may request a hearing and seek the approval of the Commission for the proposed services. Such services shall take into account the employee's pre-injury job and wage classifications; his or her age, aptitude and level of education; the likelihood of success in the new vocation; and the relative costs and benefits to be derived from such services.

By this amendment, the General Assembly has reaffirmed the concept that the statute must be liberally construed. Moreover, nothing in the statute, as amended, suggests that the General Assembly intended that a college education would be deemed in all circumstances outside the range of benefits provided under the Act.

When "fair consideration is given to 'the relative costs and benefits to be derived from the program' " of study that Yeargain is pursuing, *Colegrove*, 228 Va. at 294, 321 S.E.2d at 656 (quoting *Lancaster v. Cooper Industries*, 387 A.2d 5, 9 (Me. 1978)), the "reasonable and necessary" standard of Code § 65.1-88 has been met. I believe that the Virginia standard, which is quite similar to Maine's "reasonable and proper" standard, requires consideration of the same factors enunciated in *Lancaster*: "the relative costs

and benefits to be derived from the program, the employee's work-life expectancy, and [the employee's] ability and motivation to undertake the program, [the employee's] prospects for recovering work capacity through medical rehabilitation or other means, and other factors that logically become relevant on the facts of each particular case." 387 A.2d at 9.

Commissioner O'Neill's dissent from the commission's decision in this case makes the appropriate analysis:

Looking solely at the employer's economic position in this case, I find that it appears to be in the employer's best interest to invest an additional $4,900.00 over the next two years to gain a substantial prospective saving in compensation payments. Further, and contrary to the thoughts expressed by the majority, I believe that the request of this claimant comes well within the rehabilitation concepts set forth in *City of Salem v. Colegrove, supra*, particularly the concept of cost-effectiveness.

First, let us look at the dollar cost to the employer. At the current rate of weekly compensation payment ($234.00) the employer will pay the claimant $12,168.00 annually. If she keeps the same job she is in at the current rate of pay, she would receive more than $52,000.00 in additional weekly compensation payments before her eligibility for temporary partial benefits would expire in January, 1993 (500 weeks). However, by continuing to pay at the current rate during the claimant's continuing schooling until approximately December, 1990, the employer can save $20,000.00 or more if the claimant continues to show that desire to improve herself which she has already demonstrated. This figure credits the employer for investment of approximately $4,900.00 for tuition and books as proposed. In addition, any increases in pay at her present secretary/bookkeeper job would likely reduce the employer's weekly exposure and increase the saving mentioned above.

More important than the cost benefit which is in specific conformity with the *City of Salem* case, the investment by the employer in the particular plan proposed by the claimant permits not only fulfillment of a legitimate rehabilitation goal but also vests a degree of control in the employer

through its insurance representative. As the claimant would near the conclusion of her specific degree program, particular effort may be exercised to place her in a position eligible for an annual salary of $28,800.00 or more, the wage figure which would eliminate the employer's compensation liability.

Yeargain has made laudable and extraordinary efforts to prepare for a more sedentary occupation within her physical capacity. She has obtained an associate degree, maintained good grades, obtained admittance to and completed one-half the courses required for a degree at the University of Richmond, and seeks only modest assistance in completing her schooling. Her chances of succeeding at rehabilitation are high. Because the commission failed to make the appropriate cost-benefit analysis and for the reasons stated, I would reverse the decision.