COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, AtLee and Malveaux
Argued at Richmond, Virginia

ROCKINGHAM COUNTY SCHOOL BOARD, ET AL.

v.      Record No. 1193-23-2

SHARON ROHRBAUGH

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
AUGUST 27, 2024

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Amanda Tapscott Belliveau (McCandlish Holton, P.C., on briefs),
> for appellants.
>
> Michael L. Ritchie (Ritchie Law Firm, P.L.C., on brief), for
> appellee.

Rockingham County School Board and Graphic Arts Mutual Ins. Co. (collectively, the

"Rockingham School Board") appeal from a decision of the Workers' Compensation Commission.

The Commission found that inpatient residential care at an assisted living facility was reasonable

and necessary medical care for the claimant, Sharon Rohrbaugh – and that such care was causally

related to her work accident.  On appeal, the Rockingham School Board argues that the Commission

erred in finding "that the requested inpatient residential care is 'medical treatment,'" and argues that

such care was not necessary or causally related to Rohrbaugh's workplace accident.

I. BACKGROUND

Sharon Rohrbaugh was employed as a teacher's aide with the Rockingham County

School Board.  In March 1987, she suffered a compensable injury by accident when she tripped

over a mop handle and fell down a flight of stairs, resulting in a traumatic brain injury.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Rohrbaugh suffered "Post Traumatic supraorbital neur[a]lgia," and the Commission entered an agreed order awarding Rohrbaugh medical benefits and temporary total disability benefits. Rohrbaugh's medical condition has gradually deteriorated over the ensuing decades. In 2001, the Commission stated that Rohrbaugh's medical records establish that she suffered from a brain injury, and it determined that her "hydrocephalus . . . was aggravated by the fall" and that Rohrbaugh's "psychological overlay and seizure disorder are directly related to the fall at work in 1987." The Commission also noted Rohrbaugh's testimony that she was becoming progressively weaker and that she needed assistance to walk. The Commission further found that Rohrbaugh was unable to return to gainful employment, and it awarded her permanent total disability benefits. Later, in 2005, the Commission entered a stipulated order for the Rockingham County School Board to provide Rohrbaugh a Hoveround brand wheelchair. More recently, in 2018, the Commission noted Rohrbaugh's decreased mobility, and it entered an order instructing the School Board to provide Rohrbaugh with Xarelto medication to prevent blood clots.

Rohrbaugh lived in her home with her husband until 2020, when her husband moved out of the home. That summer, a home health aide began helping care for Rohrbaugh, but she still experienced several falls and had multiple visits to the emergency department. On June 29, 2020, Rohrbaugh visited the hospital emergency room at RNH Medical Center after she lost her balance and fell in the bathroom, bruising her right ribs against the bathtub. The medical records from that visit also reflect that Rohrbaugh lived "at home by herself and has frequent falls." Rohrbaugh again visited the emergency department on July 9, 2020, with rib pain and bruising on the back of her right arm. In the clinical notes section of her medical records, it was noted that Rohrbaugh was experiencing excruciating pain and vomiting. The treating nurse stated that

Rohrbaugh "has a history of falls and is not safe at home. [She] needs 24/7 care and nursing home placement."

On July 27, 2020, Rohrbaugh returned to the emergency department after experiencing suicidal ideation, and she noted that she was "tired and lonely and unable to care for herself anymore." The emergency department physician noted in her records that Rohrbaugh should be admitted to the hospital for observation until she could be placed in a skilled nursing facility. On August 15, 2020, Rohrbaugh presented to the emergency department with seizures. On August 21, 2020, Rohrbaugh again visited the emergency department with multiple bruises from recent falls.

In September 2020, Rohrbaugh began residing with her daughter, Amy Crews. When this living arrangement became unsustainable in December 2020, Rohrbaugh then began residing with her friend, Sandra Rohr, and then with Rohr's sister, Connie Clem, but neither of them was able to host Rohrbaugh long-term. During this time Rohrbaugh continued to experience falls. At Rohr's residence, Rohrbaugh suffered falls down steps and while in the shower. While staying with Clem, Rohrbaugh fell and struck her head, resulting in a laceration that required sutures. At the end of January 2021, Rohrbaugh moved into Willow Estates, a licensed assisted living facility.

On September 13, 2021, Rohrbaugh visited her primary care physician, Christian Iudica, M.D. Dr. Iudica assessed Rohrbaugh, and in his record of that visit he noted, "She is now in Willow Estates and is mostly taken care of [by] the doctor there," and also noted that Rohrbaugh "cannot live alone or to care for herself due to her chronic medical issues." That same day, Dr. Iudica completed a questionnaire provided to him by counsel for Rohrbaugh. In his answers, Dr. Iudica agreed that as a result of Rohrbaugh's workplace injury "she is unable to safely live

alone," "she requires more care and supervision than a home health service can provide," and "she requires the care and supervision provided by an assisted living facility."

In February 2022, occupational therapist Amy Homan DePoy evaluated Rohrbaugh and presented her findings in a report dated March 16, 2022. In her report, DePoy concluded, "The opinion of this clinician, based on all assessments indicated in this report, is that Ms. Rohrbaugh is best served by living in an assisted living facility due to the nature of her physical and cognitive abilities."

On April 5, 2022, counsel for both parties deposed Dr. Iudica. During the deposition, Dr. Iudica agreed that being left alone for long stretches of the day would be inadequate care for Rohrbaugh. Dr. Iudica also noted that Rohrbaugh needed someone to supervise her both during the day and at night and to assist her if she fell. Finally, Dr. Iudica concurred with occupational therapist DePoy's report, and he stated that in his professional medical opinion, DePoy's recommendations should be followed.

On May 4, 2022, Marshall Crespin, a certified physician's assistant, completed a questionnaire provided to him by counsel for Rockingham County. Based on the medical records then available to him, Crespin indicated that Rohrbaugh did "not require in patient medical care at this time." However, Crespin's opinion changed after he physically examined Rohrbaugh two days later on May 6, 2022. Crespin then authored a letter opining that Rohrbaugh's "physical and cognitive deficits do seem more significant than what I extrapolated from reviewing her previous records available in our electronic medical record system and the functional assessment with Ms. DePo[y]." Crespin then completed a questionnaire agreeing that Rohrbaugh suffers from instability and falls due to her workplace accident. He also indicated that Rohrbaugh requires twenty-four hour monitoring to reduce her risk of falls and to help her get up after any falls.

Nevin Yoder, a family nurse practitioner, assessed Rohrbaugh when she was first admitted to Willow Estates. On August 28, 2022, Yoder, authored a letter stating that she reviewed Rohrbaugh's medical records, "including notes from neurology, her PCP and an occupational therapist." In her letter, Yoder further stated, "After reviewing these documents and talking with Georgie Ann Thompson, the nurse who cares for her [Rohrbaugh] at the current assisted living facility, I do feel like a facility where she can be monitored 24 hours a day by caregivers would be the best option for her." The letter also provides that Rohrbaugh continues to experience falls and seizures and that "there are times that staff need to pick her up out of her wheelchair while she is seizing and place her in the bed so she is safe." Yoder recounted that nurse Thompson "does not feel the resident [Rohrbaugh] is safe to live independently based on the amount of care the staff provide for her." Yoder concluded her letter by stating, "Again I do feel a facility such as an assisted living, would be the best option for her."

In September 2021, Rohrbaugh filed a request for a hearing before the Commission, alleging a change in condition and requesting that the Rockingham County School Board pay for "inpatient residential care" at Willow Estates that she argued was a direct result of her compensable accident. Following the hearing, the deputy commissioner granted Rohrbaugh's request for residential treatment and found that such care was a medical consequence of her compensable injury. In its request for review, the Rockingham School Board argued that residential care at an assisted living facility, as opposed to a nursing home, is "not necessary medical care" under Code § 65.2-603.

On June 12, 2023, the full Commission issued a unanimous decision affirming the deputy commissioner. The Commission stated that it had previously held in another case that placement in an assisted living facility was "reasonable and necessary medical care." *See McKay v. Arby's*, JCN 1302640 (Oct. 7, 2014). The Commission also stated, "A claimant does not need to prove a

change in condition to be entitled to medical care under the Act," but that such a change would be necessary if Rohrbaugh had sought resumption of wage loss benefits. The Commission further found that the decision as to where and how medical treatment should be rendered rests with the treating physicians. "Here," the Commission stated, "the claimant's doctors have recommended a residential care facility." Affirming the deputy commissioner's award, the full Commission held, "According to the consulted medical professionals, the claimant needs the care provided in a residential facility relative to conditions causally related to her work accident." The Rockingham School Board now appeals to this Court.

## II. ANALYSIS

On an appeal from the Workers' Compensation Commission to this Court, "the appellant bears 'the "burden of showing" that the Commission committed "reversible error."'" *LKQ Corp. v. Morales*, 78 Va. App. 158, 163 (2023) (quoting *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019)); *see Humphries v. Newport News Shipbuilding & Dry Dock Co.*, 183 Va. 466, 476 (1945) ("The finding of the Industrial Commission is presumed to be correct and the burden is on appellant in this court to point out the error committed by the Commission."). "[T]he full commission is the factfinder for commission proceedings." *Meidan, Inc. v. Leavell*, 62 Va. App. 436, 442 (2013). As such, "the Commission's factual findings are 'conclusive and binding' if 'supported by credible evidence.'" *Jones*, 69 Va. App. at 774 (quoting *Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 350 (2015)); *see* Code § 65.2-706(A); *Carrington v. Aquatic Co.*, 297 Va. 520, 522-23 (2019) ("The Commission's determinations of fact are conclusive and binding on appeal."). "This deference to the Commission's factfinding necessarily requires that we . . . construe the evidence in the light most favorable to the prevailing parties before the Commission." *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019).

The Rockingham School Board acknowledges that Rohrbaugh fell at work and sustained a compensable brain injury. On appeal to this Court, the School Board contends that the Commission's award of inpatient residential care is outside the scope of medical attention that the School Board must furnish to Rohrbaugh. Specifically, the School Board argues that "the Commission erred in finding that the appellee's residential care at Willow Estates Retirement, a licensed assisted living facility, constitutes 'other necessary medical attention'" under Code § 65.2-603.[1] As this Court has often stated, "Whether disputed medical treatment is compensable as 'other necessary medical attention' within the definition of Code § 65.2-603 presents a mixed question of law and fact, which this Court reviews *de novo*." *Cumberland Hosp. & Ace Am. Ins. Co. v. Ross*, 70 Va. App. 761, 766 (2019) (quoting *Haftsavar v. All Am. Carpet & Rugs, Inc.*, 59 Va. App. 593, 599 (2012)).

Under the Workers' Compensation Act (the "Act"), the Rockingham County School Board generally has a duty to furnish medical attention for Rohrbaugh's compensable injury. Code § 65.2-603; *Goodyear Tire & Rubber Co. v. Pierce*, 9 Va. App. 120, 128 (1989). As the Supreme Court has clearly stated, "The [Workers' Compensation] Act is based upon the premise that an employer is liable for the condition of an employee resulting from an industrial accident." *Carrington.*, 297 Va. at 525 (alteration in original) (quoting *Am. Furniture Co. v. Doane*, 230

---

[1] The School Board also argues, "The Commission erred in finding that the requested residential care is causally related to the work accident." As this Court has consistently stated, "The commission's determination regarding causation is a finding of fact and is binding on appeal when supported by credible evidence." *Marcus v. Arlington Cnty. Bd. of Supervisors*, 15 Va. App. 544, 551 (1993) (citing *Holly Farms Foods, Inc. v. Carter*, 15 Va. App. 29 (1992)). Here, the Commission explicitly found, "[W]e agree with the Deputy Commissioner that this medical treatment is reasonable, necessary, *and causally related to the work accident*." (Emphasis added). This factual finding by the Commission is supported by credible evidence in the record, such as the questionnaire responses from Dr. Iudica and Physician's Assistant Crespin, as well as a clinical report by occupational therapist DePoy. Consequently, we cannot conclude that the Commission was without credible evidence in finding that Rohrbaugh's requested residential care is causally related to her compensable injury.

Va. 39, 42 (1985)).  The Act provides, in relevant part, that the employer must furnish a

physician and other necessary medical attention:

> *As long as necessary after an accident*, the employer shall furnish
> or cause to be furnished, free of charge to the injured employee, a
> physician chosen by the injured employee from a panel of at least
> three physicians selected by the employer *and such other
> necessary medical attention*.

Code § 65.2-603(A)(1) (emphases added).

As the Supreme Court has often stated, "When the language of a statute is unambiguous,

we are bound by the plain meaning of that language."  *McKellar v. Northrop Grumman*

*Shipbuilding, Inc.*, 290 Va. 349, 354 (2015) (quoting *Conyers v. Martial Arts World of*

*Richmond, Inc.*, 273 Va. 96, 104 (2007)).  Here, we are tasked with determining whether the

inpatient residential care the Commission awarded to Rohrbaugh qualifies as "such other

necessary medical attention" under Code § 65.2-603(A)(1).  The term "medical" has been

defined as "of, relating to, or concerned with physicians or with the practice of medicine."

*Webster's Third New International Dictionary* 1402 (1993).  In turn, the term "medicine" means

"the science and art dealing with the maintenance of health and the prevention, alleviation, or

cure of disease."  *Id.*  In the context of determining what "other necessary medical attention"

includes, the Supreme Court has explained that "attention" means "observant care," such as the

"responsibility for or attention to safety and well-being" for a patient.  *Low Splint Coal Co. v.*

*Bolling*, 224 Va. 400, 404-05 (1982) (quoting *Webster's Third New International Dictionary*

141, 338 (1971)) (holding that structural improvements to a claimant's home do not qualify as

"necessary medical attention" because they are not medical care, supervision, or services).

Consequently, depending on the facts of a particular case, "medical attention" under Code

§ 65.2-603(A)(1) can include physician-authorized observant care to maintain a patient's health.

The Commission here concluded that Rohrbaugh's care at Willow Estates was reasonable and necessary, and its factual findings show that Willow Estates provided Rohrbaugh with inpatient care that included supervision and assistance from medical providers. The Commission found that Willow Estates provides staff and nurses who supervise Rohrbaugh to try to prevent her from being injured in a fall, who assist her in ambulating (and if she does suffer a fall), and who also assist her with the administration of medication. Furthermore, the Commission found that Willow Estates nurses and staff monitor Rohrbaugh and assist her when she experiences seizures. The Commission credited the opinion of Nurse Practitioner Yoder, who assessed Rohrbaugh and found that "a facility where she can be monitored 24 hours a day by caregivers would be the best option for her." The Commission also clearly credited Dr. Iudica's opinion, which concurred with the occupational therapist DePoy's opinion, that "the claimant needed residential care due to her physical and cognitive impairments." These findings are supported by testimony from Rohrbaugh's providers in the record and the correspondence and caregivers' notes that are also in the record. Given the facts of this case, the attention and assistance Rohrbaugh received from medical staff at Willow Estates is the sort of "observant care" for "the maintenance of health" that can satisfy the standard under Code § 65.2-603. *See also Bolling*, 224 Va. at 404-05; *Pack v. Little Rock Convention Ctr.*, 427 S.W.3d 586, 592 (Ark. 2013) (holding that the care provided in an assisted living facility was compensable care under the Arkansas Workers' Compensation statute). Consequently, we cannot say that the Commission erred in finding that Rohrbaugh's inpatient assisted living care at Willow Estates qualified as "medical attention" under Code § 65.2-603 in this *particular case*.

In addition, caselaw from Virginia appellate courts demonstrates that the role of establishing what care is medically necessary for a claimant is best left to that claimant's physician/treating provider. *See, e.g.*, *Bolling*, 224 Va. at 404; *Lynchburg Foundry Co. v. Goad*,

- 9 -

15 Va. App. 710, 714-15 (1993). As this Court stated in *Goad*, "[T]he employer is financially responsible for the medical attention *which the attending physician deems necessary*, subject to review by the Commission." *Goad*, 15 Va. App. at 714 (emphasis added) (quoting *Jensen Press v. Ale*, 1 Va. App. 153, 159 (1985)).

For example, in *Goad*, this Court held that "other necessary medical attention" included a nurse travelling to a claimant's home to change his wound dressing even though the claimant was capable of driving himself to a medical office to receive that same treatment. *Id.* at 712-16. This Court held that, even though a more cost-effective method of delivering the treatment was available, the employer was required to pay for the at-home treatment because it was authorized by the claimant's physician (and the employer organized no alternative treatment). *Id.* at 714-15 ("Clearly, this home treatment was authorized by Dr. Chavis, and the fact that he later stated that it was not necessary to have the treatment rendered *at home* does not shift the payment burden to appellee." (emphasis in original)).

Furthermore, this Court has confirmed that an employer can be required to pay for treatment – such as even a claimant's home hot tub – when the claimant's treating physician specifically authorized that purchase. *Portsmouth (City of) Sch. Bd. v. Harris*, 58 Va. App. 556, 565 (2011) (citing *Reynolds Metals Co. v. Chowning*, No. 0800-00-2 (Va. Ct. App. Aug. 22, 2000)). In *Chowning*, this Court held that a prescription for a home whirlpool hot tub was medically necessary because the treating physician concluded that the hot tub could help the claimant manage the painful symptoms of her condition and because a health club membership was medically insufficient to accomplish the same purpose. *Chowning*, No. 0800-00-2.[2] In

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 572 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

*Harris*, this Court approvingly cited the provision of a hot tub in *Chowning*, but clarified that a general prescription for a hot tub for the claimant in *Harris* was insufficient to justify the purchase of a six-person hot tub spa without evidence showing that the larger multi-person hot tub spa was somehow medically necessary. *Harris*, 58 Va. App. at 565-67 (citing *Chowning*, No. 0800-00-2). Our caselaw demonstrates that the opinion of a claimant's treating provider authoritatively informs what is considered "necessary medical attention" for that particular claimant under Code § 65.2-603.

In the case now before us, the full Commission unanimously found, "According to the consulted medical professionals, the claimant needs the care provided in a residential facility relative to conditions causally related to her work accident." In addition, the Commission found that "the claimant's doctors have recommended a residential care facility [for her]." The Commission noted that Dr. Iudica "agreed the claimant required the care and supervision provided by an assisted living facility." It also emphasized that occupational therapist DePoy "found the claimant would be 'best served by living in an assisted living facility due to the nature of her physical and cognitive abilities'" – and also found that Dr. Iudica "agreed with DePoy's recommendations including assisted living." In addition, the Commission credited Physician's Assistant Crespin's final findings that Rohrbaugh needed residential care, and it also credited Nurse Practitioner Yoder's opinion that "a facility where she can be monitored 24 hours a day by caregivers would be the best option for her." These findings of fact and of credibility by the Commission are binding on appeal because they are supported by credible evidence in the record, including Rohrbaugh's medical records, the providers' notes, deposition testimony, and the questionnaires completed by these medical professionals. *See* Code § 65.2-706(A); *Carrington*, 297 Va. at 522-23.

Given that the plain meaning of "medical attention" can include physician-authorized observant care to maintain the health of a patient and given that Rohrbaugh's medical providers here were unanimous in recommending that such care in a residential facility such as Willow Estates was something she now needed (because of the deterioration of her medical condition that originally resulted from her compensable injury), we cannot say that the Commission erred in determining that Rohrbaugh's treatment in this particular case qualified as "other necessary medical attention" under Code § 65.2-603.  Furthermore, our conclusion is bolstered by clear caselaw from the Virginia Supreme Court that we must liberally construe the Workers' Compensation Act to the benefit of workers.  *See Dinwiddie Cnty. Sch. Bd. v. Cole*, 258 Va. 430, 436-37 (1999) ("[S]hould doubt remain, [the claimant] is entitled to the benefit of the doubt [because t]he provisions of the Workers' Compensation Act 'should be liberally construed to carry out [its] humane and beneficial purposes.'" (fourth alteration in original) (quoting *Baggett Transp. Co. v. Dillon*, 219 Va. 633, 637 (1978))).

### III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the decision of the Workers' Compensation Commission.

*Affirmed*.