573 A.2d 96

**R & T CONSTRUCTION COMPANY, et al.**

**v.**

**Thomas Claude JUDGE.**

**No. 1300, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 8, 1990.

702

John Noble (Alexander J. Crow and Noble and Crow, P.A., on the brief), Rockville, for appellants.

Ronald S. Canter (Wolpoff and Abramson, on the brief), Rockville, for appellee.

Argued before GILBERT, C.J., and ROBERT M. BELL and WENNER, JJ.

ROBERT M. BELL, Judge.

This is an appeal by R & T Construction Company and its insurer, Maryland Casualty Company, appellants, from a judgment in favor of Thomas C. Judge, appellee, entered, on a jury verdict, by the Circuit Court for Montgomery County. It raises four issues, namely:

1. Whether the lower court erred in denying appellant's motion for judgment and in ruling that, as a matter of law, further home modifications, a specially equipped van for non-medical purposes and increased electrical expenses were covered under Maryland Annotated Code, Art. 101, § 37.

2. Whether the lower court erred in allowing Dr. Robert Menter to testify that the appellee is in need of a van modified for non-medical purposes.

3. Whether the lower court erred in allowing a psychologist to testify as to claimant's need for home modifications and his need of a van modified for his use for non-medical purposes.

4. Whether the lower court erred in ruling that the Maryland Workers' Compensation Commission had jurisdiction over this case.

We answer each of the questions in the negative, thus, we will affirm the lower court's judgment.

The facts are, for the most part, undisputed. Appellee, while employed as a construction worker for a Virginia based employer, was seriously injured in an accident arising out of and in the course of his employment. The accident occurred in Gaithersburg, Maryland in October, 1981. As a result of the injuries he received, appellee was rendered a respirator-dependent quadriplegic, requiring around-the-clock nursing care.

Although he initially filed a claim with the Maryland Workers' Compensation Commission, he later voluntarily withdrew it, in order to file a claim with the Virginia Industrial Accident Commission. Appellee was, and is, a resident of Virginia. The Virginia Commission "awarded ... Judge compensation benefits during the course of his disability, and further awarded him medical benefits for as long as required."

Notwithstanding that appellants had made certain modifications to appellee's home—constructing a ramp and installing air conditioning—and supplied appellee with a specially equipped van to provide transportation for medical purposes, on two subsequent occasions, appellee filed applications with the Virginia Commission seeking additional benefits. On the first occasion, he sought to purchase "a van to be permanently situated at his home on a 24 hour per day basis that would allow him to leave his home and ultimately give him more freedom of movement...." On the second occasion, he sought additional modifications to his home, which would "make it accessible for his uses as a wheelchair bound quadriplegic accident victim." *Judge v. R & T Construction,* 68 Md.App. 57, 59, 509 A.2d 1236, *cert. denied,* 307 Md. 433, 514 A.2d 1211 (1986). The Virginia Commission denied both applications.[1] The ruling on the home modifications was premised on the employer and

---

1. Before July, 1983, Virginia's statute did not provide for, and, indeed, had been interpreted by its highest court as excluding, home modifications. *See infra.* Appellee's application for additional modifications

insurer having exceeded the statutory liability limits. Appellee did not seek as he did here, reimbursement of the increase in utility expenses necessitated by the life support and other medically required equipment he must use.

Appellee filed another compensation claim in Maryland.[2] In his application, appellee sought from the Maryland Commission the same relief that the Virginia Commission had just denied, namely, additional modifications to his home for purposes of making it wheelchair accessible and a modified van for transportation purposes other than medical appointments. In addition, he sought reimbursement of the increases in electrical expense necessitated by the life support systems and other equipment he had to use. Although the Commission determined that it had jurisdiction to entertain

---

to his home was filed subsequent to the July, 1983 effective date of the amendment to the Virginia Act which added explicit language allowing home modifications. The Section, 65.1–88, Code of Virginia, provided, in pertinent part:

Duty to furnish medical attention, etc., and vocational rehabilitation, effect of refusal of employee to accept.

... In awards entered for incapacity for work, under this title, upon determination by the treating physician and the Commission that the same is medically necessary, the Commission may require that the employer furnish and maintain wheelchairs, bedside lifts, adjustable beds and modification of the claimant's principal home consisting of ramps, and rails or any appliances prescribed by the treating physician and doorway alterations, provided that the aggregate cost of all such items and modifications required to be furnished on account of any one accident shall not exceed $10,000.

2. Believing that, because he had voluntarily withdrawn his first claim, he need only "reopen" that claim, appellee's request of the Maryland Commission was that it do just that—reopen his claim. The Commission denied that request, dismissing it "for lack of jurisdiction....," *Judge,* 68 Md.App. at 59, 509 A.2d 1236, and, on appeal, the circuit court affirmed. We reversed. Analogizing the situation to one in which a lawsuit is voluntarily dismissed by a plaintiff and noting that appellee's subsequent claim was made within the period of limitations, we reasoned that there was nothing to prevent appellee from filing a new compensation claim. Thus, we held "that the Commission should have treated [the application to reopen] as the filing of a new claim, just as a court would treat the filing of a lawsuit after voluntary dismissal without prejudice." 68 Md.App. at 63–64, 509 A.2d 1236.

the claim and that it was not barred by limitations or precluded from acting by Article 101 § 21(c)(4),[3] it found "that the claimant is not entitled to payment for increases in electric bills, a van, and further modifications to his home pursuant to the provisions of Art. 101, sub-section 37."

Appellee appealed to the circuit court, challenging only the Commission's interpretation of § 37(a). Appellants like-

---

3. In pertinent part, Maryland Code Annotated, Art. 101 § 21(c)(4) provides:

(c) *Exemptions.*—The following employees are exempt from the coverage of this Act:

    \*     \*     \*     \*     \*     \*

(4) Casual employees or any employees who are employed wholly without the State, except that for all purposes of this article, casual, occasional or incidental employments outside of this State by the Maryland employer of an employee or employees regularly employed by said employer within this State shall be construed to be employment within this State, and except that if a contract of employment is entered into in this State for work to be done entirely outside of the United States, this State shall have jurisdiction over work-related injuries or occupational diseases. If an employee or the dependents of an employee shall receive compensation or damages under the laws of any other state, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this article. An employee and his employer who are not residents of this State and whose contract of hire is entered into in another state shall be exempted from the provisions of this article while such employee is temporarily or intermittently within this State doing work for such nonresident employer, if such employer had furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of such other state, so as to cover such employee's employment while in this State; provided the extraterritorial provisions of this article are recognized in such other state and provided employers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the workmen's compensation act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this State.

A certificate from the duly authorized officer of the industrial accident commission or similar department of another state certifying that the employer of such other state is insured therein and has provided extraterritorial coverage insuring his employees while working within this State shall be prima facie evidence that such employer carries such compensation insurance.

wise appealed; they challenged the Commission's determination that it had jurisdiction over the case. Both sides moved for summary judgment. Appellants sought summary judgment on the jurisdictional issue and appellee sought partial summary judgment with respect to the interpretation of § 37(a). The circuit court denied appellants' motion, but granted appellee's. It entered partial summary judgment, on the grounds presented, in favor of appellee. The case was then set for jury trial "for the purpose of determining the extent of benefits, if any, which the claimant should receive, under § 37 of the Act...." At the conclusion of the trial, the jury returned special verdicts in favor of appellee, finding that he was entitled to home modifications, a modified van, and reimbursement for increased utility costs. This appeal followed.

1

As phrased by appellants, the first issue presented has two aspects. The first involves the interpretation of § 37(a). As to it, appellants maintained below, as they do on appeal, that the court erred in interpreting § 37(a) to include "non-medical-type treatment, apparatus, and the like." The second aspect relates to the sufficiency of the evidence to support the jury's verdict. As to it, appellants assert that the evidence presented at trial was wholly insufficient to support the jury's verdicts. We will address each aspect separately.

## A. INTERPRETATION

Maryland Code Annotated Art. 101, § 37(a) provides:

(a) *Employer to provide medical, etc., treatment and services.*—In addition to the compensation provided for herein the employer shall promptly provide for an injured employee, for such period as the nature of the injury may require, such medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches, apparatus, artificial hands, arms, feet and legs and other prosthetic applicances as may be required by the

Commission, provided, however, that any order or award of the Commission, under this subsection, shall not be construed to reopen any case, or permit any previous award to be changed or modified, except as provided in § 40(c) and 40(d) of this article.

In *Harris v. Janco Enterprises*, 53 Md.App. 674, 677, 455 A.2d 453 (1983), this Court, referring to the appropriate interpretation of § 37(a), observed: "It is perfectly clear that this language deals with medical services necessary or desirable to treat the effects of the injury, and not with services rendered by physicians solely for the purpose of evaluating the extent of disability in order to present testimony on that issue." At issue in that case was, as is obvious from the above, the question whether § 37(a) covered fees paid to an evaluating physician for his or her testimony at a hearing. Except as to the issue directly presented, the court was not called upon to interpret what constitutes "medical services". As such, it had no occasion to address the meaning of "other attendance", "apparatus", and "other prosthetic appliances". In fact, this issue has never been addressed by any Maryland court. It is our task to undertake that interpretation now.

We approach this task fully aware that, consistent with Maryland Code Annotated Art. 101 § 63, "this article shall be so interpreted and construed as to effectuate its general purpose"—as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. *Soper v. Montgomery County*, 294 Md. 331, 335, 449 A.2d 1158 (1982); *Howard County Association for Retarded Citizens v. Walls*, 288 Md. 526, 530, 418 A.2d 1210 (1980); *W.C. & A.N. Miller Development Company v. Honaker*, 40 Md.App. 185, 189, 388 A.2d 562 (1978), *aff'd*, 285 Md. 216, 401 A.2d 1013 (1979). Furthermore, where a provision of the Workers' Compensation Act is ambiguous, the uncertainty or conflict should be resolved in favor of the claimant. *Ryder Truck Lines v. Kennedy*, 296 Md. 528, 537, 463 A.2d 850 (1983). *Coats & Clark's Sales Corp. v. Stewart*, 39 Md.App. 10, 16–17, 383 A.2d 67

(1978); *Keene v. Insley,* 26 Md.App. 1, 11–12, 337 A.2d 168 (1975). Of course, "neither statutory language nor legislative intent can be stretched beyond the fair implication of the statute's word or its purpose," *Soper v. Montgomery County,* 294 Md. at 335, 449 A.2d 1158, in order to create ambiguity or conflict. Rather, any construction of the Workers' Compensation Act should take account of its clear meaning. In other words, a construction should not disregard the plain language of a provision of the Act in order to create a conflict of ambiguity so that the provision may be interpreted in favor of the injured worker. *See Crowner v. Baltimore United Butchers Association,* 226 Md. 606, 610, 175 A.2d 7 (1961).

As we have seen, we have construed § 37(a) as dealing with "medical services". Neither this Court nor the Court of Appeals has, however, been faced with the question of what "medical services" specifically entails. On the other hand, a noted commentator has observed that

> "Medical benefits ordinarily include not only medical and hospital services and nursing care, which may be compensable even when supplied at home by a member of claimants' family but also necessary incidentals such as transportation, appartus, supplies, and sometimes even special housing facilities."

2 Larson, Workmen's Compensation Law (1989), § 61.00. *See also Squeo v. Comfort Control Corporation,* 99 N.J. 588, 494 A.2d 313 (1985); *Derebery v. Pitt County Fire Marshall,* 347 S.E.2d 814 (N.C.1986) *rev'g,* 76 N.C.App. 67, 332 S.E.2d 94 (1985); *Peace River Electric Corp. v. Choate,* 417 So.2d 831 (Fla.App.1982), *Pet. for Rev. dism.,* 429 So.2d 7 (Fla.1983). This is to be contrasted with cases from other jurisdictions which narrowly construe "medical services". *See e.g. Low Splint Coal Company, Inc. v. Bolling,* 297 S.E.2d 665 (Va.1982); *Savaria v. DiSano,* 118 R.I. 357, 373 A.2d 820 (1977).

In *Bolling,* the claimant was a paraplegic confined to a wheelchair. He sought construction of a concrete ramp and

modifications to his bathroom. Although the Virginia Industrial Commission granted the relief, the lower court reversed. The Virginia Supreme Court affirmed the lower court. The statute at issue in that case provided:

> As long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and *such other necessary medical attention,* and where such accident results in the amputation of an arm, hand, leg or foot or the enucleation of an eye or the loss of any natural teeth or loss of hearing, the employer shall furnish prosthetic appliances, proper fitting thereof, and training in the use thereof, as the nature of the injury may require ... and in addition, such surgical and hospital service and supplies as may be deemed necessary by the attending physician or the Industrial Commission.
>
>     \*      \*      \*      \*      \*      \*
>
> The employer shall also furnish or cause to be furnished, at the direction of the Industrial Commission, *reasonable and necessary vocational rehabilitation services.* (Emphasis added)

Code of Virginia, 65.1–88 (Repl.Vol.1980). Construing this statute, the Court concluded that "other necessary medical attention" was limited to services and, thus, did not contemplate structural renovations. Nor did the phrase "reasonable and necessary vocational rehabilitation training services" encompass such renovations. 297 S.E.2d at 667. Indeed, the Court said, "the employer [was] responsible for providing only those services and those prosthetic appliances specifically delineated in the statute." 297 S.E.2d at 668. In short, the Supreme Court opined that the statute "cannot properly be read to include the structural improvements in question as either 'other necessary medical attention' or 'reasonable and necessary vocational rehabilitation

training services.' " *Id.*, 297 S.E.2d at 666.[4]

The statute at issue in *Savaria, supra,* provided, in pertinent part:

> The employer shall ... promptly provide for an injured employee such reasonable medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury and to restore the function of the injured member organ where such restoration is possible....

In that case, the claimant, who was unable to use his legs and could barely move his arms, sought to be provided with an electric wheelchair and an automatic lift or elevator. Interpreting the statute, the Workmen's Compensation Commission granted the request for a wheelchair but denied the request for the automatic lift or elevator. The Supreme Court of Rhode Island affirmed. Interpreting the statute, and notwithstanding testimony from the treating physician that although the claimant's health would not be improved or his mobility increased, the claimant would benefit from the automatic lift or elevator because it would relieve him from the effects of his injury, the Court concluded that "it [was] not enough that the means used to relieve the employee from the effects of his injury [had] been prescribed by [a] physician; to be chargeable to the employ-

---

4. The statute was amended in 1983, *see* 1983, c. 471, and in 1987, *see* 1987, c. 455 and c. 475, to include, as covered items, modifications to a claimant's home. In pertinent part, it now provides:

> ... In awards entered for incapacity for work, under this title, upon determination by the treating physician and the Commission that the same is medically necessary, the Commission may require that the employer furnish and maintain wheelchairs, bedside lifts, adjustable beds and modification of the claimant's principal home consisting of ramps, handrails or any appliances prescribed by the treating physician and doorway alterations, provided that the aggregate cost of all such items and modifications required to be furnished on account of any one accident shall not exceed $20,000.00.

> *See also* note 1 *supra.*

er under the statute, they must be medical in nature as well." 373 A.2d at 822.

Those cases in which home modifications have been permitted evidence application of a broader interpretation of what constitutes "medical services". In *Squeo*, for example, the claimant, a quadriplegic, sought construction of a self-contained apartment to be attached to his parents' home. The statute pursuant to which the application was made required the employer to furnish the injured worker "such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible ..." and, where "an artificial limb or other appliance" may partially or completely relieve the effects of the permanent injury, to supply such artificial limb or other appliance. N.J.S.A. 34:15-15. The evidence in support of the application demonstrated that the claimant, who had been placed in a nursing home predominantly inhabited by elderly residents, had attempted suicide on three occasions; expert testimony tended to prove that a change in his environment would have a beneficial effect on the claimant's state of mind and, conversely, that more suicide attempts would occur should he remain in the nursing home; other expert testimony was to the effect that the claimant's "ability to choose his own living environment was the 'utmost important issue' for his physical and psychological health." 494 A.2d at 315, 316.

The Supreme Court affirmed the decision of both the Compensation Commission and the appellate division of the Superior Court. Construing the act "so as to comport with its presumptive beneficient and remedial objectives favorable to the injured workman", the Court held:

"... [U]nder certain unique circumstances, when there is sufficient and competent medical evidence to establish that the requested "other treatment" or "appliance" is reasonable and necessary to relieve the injured worker of the effect of his injuries, the construction of an apart-

ment addition may be in the ambit of N.J.S.A. 34:15–15. We caution, however, that it is only the unusual case that may warrant such extraordinary relief."

*Squeo*, 494 A.2d at 322.

*Derebery, supra,* is to like effect. There, the Supreme Court of North Carolina construed the phrase "other treatment or care" as used in that State's Act,[5] as including treatment or services not specifically delineated in the statute. 347 S.E.2d at 819. As was the case in *Squeo*, the Court relied upon testimony from claimant's physician that claimant had a need of "architecturally modified housing", *id.,* 347 S.E.2d at 822, and testimony of a registered nurse that separate modified housing would meet the claimant's emotional needs. *Id.,* 347 S.E.2d at 816. In addition, the Court noted that the applicable statute had been legislatively expanded since its initial enactment. 347 S.E.2d at 819. *See also Peace River Electric Corp. v. Choate,* 417 So.2d 831 (Fla.App.1982), *Pet. for Rev. dism.,* 429 So.2d 7 (Fla. 1983); *Rieger v. Workmen's Compensation Appeal Board,* 104 Pa.Cmwlth. 42, 521 A.2d 84, 87 (1987) (If a "wheelchair is necessary, then it logically follows that minor modification needed to facilitate use of the appliance must also be considered a necessity"); *Langford v. William Rogers, Inc.,* 144 A.D.2d 785, 534 N.Y.S.2d 761 (3 Dept.1988) (the phrase "other attendance or treatment" provides authority for ordering carrier to pay for reasonable modifications to facilitate use of a wheelchair); *Terry Grantham Company v. Industrial Commission of Arizona,* 154 Ariz. 180, 741 P.2d 313 (App.1987); *Butler v. Lanzo Construction Company,* 509 So.2d 965 (Fla.App.1987); *Zylbergleit v. Irving Rubber & Metal Company,* 87 A.D.2d 929, 450 N.Y.S.2d 87

---

5. North Carolina General Statutes, § 97–29 provided, in pertinent part:

In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care of [sic] rehabilitative services shall be paid for by the employer during the lifetime of the injured employee.

(1982); *Pine Bluff Parks and Recreation v. Porter*, 6 Ark.App. 154, 639 S.W.2d 363 (1982).

A similar situation exists as to appellee's request for a modified van. In *Terry Grantham Company, supra,* the Arizona Court of Appeals rejected an insurer's argument that a "van, unlike a wheelchair, is 'merely a form of transportation which allows one to travel [a] greater distance in a shorter period of time.' " 741 P.2d at 316. As in the instant case, the claimant was a quadriplegic whose injuries resulted in loss of control over his body temperature. Commenting on this fact, the Court stated:

> As a result of Boy's industrial injury, he has lost, among other things, his ability to perspire, and he is therefore exposed to the danger of his body temperature reaching critical levels. For Boy, a wheelchair is simply inappropriate for travel beyond limited distances.

*Id.* The Court thus interpreted "other apparatus", as used in the statute,[6] as an apparatus required to replace a lost bodily function. It agreed with the administrative law judge's finding that "the van was a reasonably required 'other apparatus' " under the statute. *Id. See also Edgewood Boys' Ranch Foundation v. Robinson*, 451 So.2d 532 (Fla.App.1984), *aff'd,* 456 So.2d 1270 (Fla.App.1984), in which the Court affirmed a workers' compensation order requiring the employer to furnish quadriplegic claimant with a specially-equipped van, an order which it determined to be fully substantiated by claimant's doctor. The Court in *Terry Grantham Company* adopted reasoning that

> "Where an industrial injury necessitates the modification or substitution of an automobile in order to accomodate a wheelchair or artificial member and to restore in part a

---

**6.** The Arizona statute, A.R.S. § 23–1062(A), provides:
Promptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of disability. Such benefits shall be termed "medical, surgical and hospital benefits".

claimant's former ambulatory ability, such costs may be awarded as "other apparatus" [pursuant to the act]".
(Citation omitted)

*Fidelity & Casualty Company of New York v. Cooper,* 382 So.2d 1331, 1332 (Fla.App.1980). 741 P.2d at 316.

There are, of course, cases on the other side of this issue as well. *See* 2 Larson, Workmen's Compensation Law, § 61.13(a), p. 10–863 and cases there cited. Those cases turn upon an interpretation of "medical apparatus or device" and, generally, reflect that that interpretation is approached from a narrow perspective. *See e.g. DeCroix v. Sumergrade and Sons,* 20 A.D.2d 735, 246 N.Y.S.2d 852 (3 Dept.1964) where claimant fractured his leg resulting in limitation of his motion at the ankle, traumatic arthritis of the ankle and an ankle ulcer, an automobile held not to be "medical apparatus or device" and, hence, commission award with respect to the cost of driving the claimant's car to and from the work was reversed.[7] *Nallan v. Motion Picture Studio Mechanics Union, Local #52,* 49 A.D.2d 365, 375 N.Y.S.2d 164 (A.D. 3 Dept.1975), *rev'd on other grounds,* 40 N.Y.2d 1042, 391 N.Y.S.2d 853, 360 N.E.2d 353 (1976) (same, applied to a paraplegic); *Kranis v. Trunz, Inc.,* 91 A.D.2d 765, 458 N.Y.S.2d 10 (3 Dept.1982) (same); *McDonald v. Brunswick Electric Membership Corp.,* 77 N.C.App. 753, 336 S.E.2d 407 (App.1985) (specially equipped van for use of a double amputee did not qualify as "other treatment or care" or "rehabilitative services" as those terms are used in the workers' compensation statute[8]).

■ We find more persuasive those cases in which the terms "medical treatment" and the like are interpreted

---

7. The pertinent part of the New York statute provided:
   The employer shall be liable for the payment of the expenses of medical, surgical, optometric, or other attendance or treatment, or nurse and hospital service, medicine, optometric services, crutches, eyeglasses, false teeth, artificial eyes, orthodonics, ... as well as artificial members of the body or other devices or appliances necessary....

8. *See* n. 5 *supra.*

more broadly. Moreover, we believe such an interpretation of such terms is consistent with the statutory mandate that this social legislation be interpreted liberally and in favor of those whom it was designed to protect. Therefore, we hold that, given an appropriate factual predicate, § 37(a) may permit the Workers' Compensation Commission to order modifications to an injured worker's home, as well as providing, for the use of the injured worker, a specially modified and equipped van. Indeed, we believe that the latter fits quite comfortably within the Maryland statute—as an "other prosthetic appliance." [9]

Appellants maintain that, with regard to increased electrical expenses, § 37(a) contains no category covering this benefit. Thus, while they do not maintain that the electrical devices furnished appellee are not necessary medical treatment or apparatus, they nevertheless argue that the increased utility bills are not themselves "medical, surgical, attendance, treatment or apparatus", even under the most liberal view of those terms. At oral argument, however, appellants all but conceded the illogic of their position. It makes absolutely no sense for a statute to require an employer to furnish an injured worker with equipment, and yet not require that same employer to supply that same injured worker the means with which to operate it. This is particularly true when the equipment is necessary for the preservation of the injured employee's life. We hold that the amount of the increase of the utility bills in respect of the electrical apparatus necessary to maintain appellee's life is covered by § 37(a), encompassed within the phrase "other attendance".[10]

---

**9.** The jury verdict may be read as requiring appellants to purchase a van and title it in appellee's name. Our holding does not go so far. Instead, appellants need only *provide* appellee with a van for transportation for "non-medical" purposes. *See Aino's Custom Slip Covers v. DeLucia,* 533 So.2d 862, 865 (Fla.App.1988).

**10.** The equipment requiring electricity include an electric hospital bed; an electric wheelchair with a battery operated "sip and puff" control, a device enabling appellee to move forward and backward in

## B. SUFFICIENCY

Appellants assert that the evidence adduced in the instant case is insufficient to sustain the jury's verdict.[11] They do so on the basis of a comparison of the facts *sub judice* with those in cases in which courts have ordered modifications to an injured employee's home and, in particular, *Squeo* and *Peace River Electric Corp.* In their view, the facts of the instant case compare unfavorably; they characterize them as less extreme and less fraught with human misery.

Appellants perceive the following passage from *Squeo* as illustrative of the difference between the facts in that case and the facts *sub judice:*

Apart from his quadriplegia, which cannot be reversed, and physical complications, which are treated as they arise, Squeo has suffered serious psychological setbacks. No one disputes that these emotional problems are a result of his work-connected injury and its consequences. Nor is it disputed that Squeo's depression is so aggravated by living in the nursing home that he has tried to kill himself on three occasions. We find these three factors —Squeo's unremitting physical ailments, his age and his having lived independently of his parents for several years prior to the accident, and his psychological dread of institutional living, culminating in three suicide attempts—are sufficient to consider this an unusual case calling for unusual relief.

Moreover, we find that competent medical testimony exists on this record to hold that the construction of the

---

the wheelchair, (the batteries must be recharged daily); a bedside respirator, with a battery operated backup; a suctioning device, used to draw out secretions accumulating in appellee's lungs; and an air conditioner and humidifier.

11. Notwithstanding their clear understanding that the interpretation of the statute is but the first step in the process and, perhaps, because of their firm belief that the van and electricity issues are true "legal issues," appellants address sufficiency only as to the home modification issue. We will do likewise.

apartment addition was reasonable and necessary treatment to relieve Squeo of his severe mental depression....
494 A.2d at 322. After recapitulating the testimony concerning the detrimental effect of Squeo's continuing to live in the nursing home, the Court continued:

> We stress that in determining what is reasonable and necessary, the touchstone is not the injured worker's desires or what he thinks to be most beneficial. Rather, it is what is shown by sufficient competent evidence to be reasonable and necessary to cure and relieve him. Here, that relief is of a psychological nature. The source of Squeo's severe mental depression is his fear of institutionalization. The testimony of all witnesses substantiate that this psychological disturbance can be relieved only by Squeo's living in an independent setting. Thus, we find sufficient credible evidence on the record to establish that construction of the apartment addition is necessary to cure and relieve the mental depression caused by Squeo's work-related injury.

494 A.2d at 322–23.

In *Peace River Electric Corp.*, upon which appellants also rely, the claimant was a paraplegic confined to a wheelchair as a result of a compensable accident. "He ha[d] lost all sensation and control from his waist downward, including control over bowel and bladder functions." 417 So.2d at 831. Moreover, he was "presently existing by himself in a dilapidated makeshift dwelling consisting of an ancient trailer and a ramshackle wooden shed that are difficult or impossible to negotiate by wheelchair." *Id.* It was under these circumstances that the District Court of Appeals of Florida having cautioned that "only extreme cases of disability might warrant such extraordinary relief," *id.*, 417 So.2d at 832, concluded that "[t]he circumstances of this case are unique and fraught with human misery...." *Id.*, 417 So.2d at 831.

Appellants characterize appellee's situation, in comparison with the facts in those two cases, as "far from being a case 'fraught with human misery'". In addition, they

maintain that there was no evidence of "medical necessity" for further home modifications [12] presented at trial.

█ Accepting the premise of these cases and maintaining that the trial court also accepted those premises, as witnessed by the fact that he instructed the jury that modifications could be awarded only "under extreme or extraordinarily unique situations," appellee maintains that ample evidence was presented to the jury to support the verdicts. As previously noted, appellee is, and the evidence reflects, a respirator-dependent high level quadriplegic. As such, he is unable to breathe on his own or control his body temperature or his bowel and bladder functions. Moreover, his paralysis is so severe that it extends to the muscles of his eyes, face and neck. Due to his inability to control his body temperature, it is necessary that appellee have a climate controlled environment, that is air conditioned and heated. And, the extent to which he is able to go outside in his wheelchair is extremely limited. Only on a weather-perfect day, *i.e.*, when the temperature is between 70 and 75 degrees, may he go outside in his wheelchair and, then, only for a distance of about one mile. Since grocery stores, movie theaters or restaurants are at least two miles from his home, they are beyond the range of his wheelchair mobility.

Although appellee lives with his wife, in a two-story dwelling in Dale City, Virginia, his condition confines him to the first level. Evidence presented by appellee tended to prove that his living space consisted realistically, and practically, of but one room, his bedroom. This is so because the hallway spaces are not sufficiently large to accomodate his wheelchair. That being so, he is unable to use the bathroom on the first level; hence, he is bathed and treated and disposes of bladder and bowel waste in his bedroom. There is no way, as the house is presently situated, for

---

**12.** Whether, or not, there was sufficient evidence of "medical necessity" presented at trial is a matter which is also addressed, *infra*, in connection with the testimony of Drs. Menter and Harrison.

appellee to access the second level of the home. Indeed, he can be moved into and out of his house, the evidence demonstrated, only with great difficulty. And his return to the home is equally fraught with difficulty.

Furthermore, as appellee points out, Dr. Menter, who was accepted, without objection, as an expert in the management and care of respirator-dependent high level quadriplegics, testified, "based upon a reasonable degree of medical certainty," that the home in which appellee lived was in need of modifications so as to "[allow] access to the primary living quarters of the family. . . ." He also testified that a modified bathroom was necessary both for appellee's need and care. This testimony, we believe, was sufficient on the question of the need for the modifications.

We discern no error.

### 2, 3

The next arguments made by appellants pertain to the expert testimony appellee presented on his need for a modified van. They address the testimony of Dr. Menter and Dr. Harrison in separate arguments.

We address appellants' arguments pertaining to Dr. Menter first. On direct examination, Dr. Menter was asked by appellee's counsel, assuming that appellee was furnished with a modified van for transportation only for visits to doctors and for other medically related purposes, whether he had an opinion, "based upon reasonable medical certainty, as to whether Tom Judge is in need of a van modified for his uses for other transportation?" Appellants' objection to that question was overruled and Dr. Menter was allowed to give his opinion.

Recognizing that expert testimony reasonably calculated to assist, rather than confuse, the trier of facts is admissible within the discretion of the court, citing *Andrews v. Andrews*, 242 Md. 143, 218 A.2d 194 (1966); *see also Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472 (1977), appellants maintain that admission of that testimony was error. They reason, since Dr. Menter, on cross-examination

conceded that the van was not "medical treatment", the testimony did not assist the jury. Indeed, they assert that the initial opinion question was itself self-contradictory.

■ We see the issue somewhat differently. To the extent that Dr. Menter's testimony can be viewed as being contradictory, the weight, rather than its admissibility, is affected. Moreover, Dr. Menter explained, in answer to a question by appellants's counsel, how he used the term "medical treatment":

Q. [By appellants' counsel]: What medical—you testified that that—I believe you testified that a van would be appropriate. What medical—for what medical treatment would a van provide him?

A. "Medical treatment" is a term that is very difficult to relate to all of the complex things that an individual with this type of a problem needs. "Medical treatment" is a term that evolved many years ago, when a "medical treatment" was something you applied to a wound or something that a nurse does, or this or that.

Over the years, without changing the specific term, it has been expanded broadly to keep up with ongoing technology and innovations in the care of individuals with whatever their disease or medical problem is, and "medical treatment" has expanded itself into areas that aren't treatments at all and are not provided by nurses, and I think we have a community of professional givers and vendors and providers, and the receivers are trapped by the use of the same old terminology, which doesn't adequately relate to the problems that we deal with today.

The value of Dr. Menter's testimony must be viewed in this context.

■ Appellants also challenge the admissibility of the testimony of Dr. Harrison. Dr. Harrison testified, "based upon a reasonable degree of [professional] certainty" that appellee had a "psychological" need for access to other areas of the house and for a van to be used for purposes other than transportation to and from doctors and other

medical visits. Appellants' objection to that evidence was on the basis "that § 37 is for medical treatment and to allow benefits, there must be *medical evidence*. Dr. Harrison is not a medical doctor." (Emphasis in original) The trial court admitted the evidence. It stated when doing so: "If Mr. Canter offers evidence that meets that test [that it be shown to be medically necessary], then I am not sure that it would be appropriate to strike Dr. Harrison's testimony...." Because, appellants maintain, no medical necessity was shown by medical evidence, the lower court should have stricken Dr. Harrison's testimony in reference to the request contained in their later objections. It is obvious that the thrust of appellants' argument is that Dr. Menter's testimony was not medical in nature. We have determined, however, that it was. Moreover we have determined that it was properly admitted on the very point at issue here. Accordingly, the court did not err in refusing to strike Dr. Harrison's testimony.

### 4

■ Finally, appellants challenge the circuit court's ruling that the Workers' Compensation Commission had jurisdiction over this case. Once again, appellee gets the better of the argument.

In *Thomas v. Washington Gas Light Company,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), the Supreme Court faced, for the third time, the issue whether the obligation of a state to give full faith and credit to another state's Workers' Compensation award bars a supplemental award being made by the second state.[13] On this occasion,

---

13. On the first occasion, *see Magnolia Petroleum Company v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), the Court held that it did. A little more than three years later, in *Industrial Commission of Wisconsin v. McCartin,* 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), the Court held that, in the absence of "some unmistakable language by a state legislature or judiciary, indicating a contrary intent", it did not. This latter opinion "severely curtailed the impact of *Magnolia* ". *See Thomas,* 448 U.S. at 261, 268, 100 S.Ct. at 2647, 2654.

the Court took a fresh look at the full faith and credit issue. 448 U.S. at 277, 100 S.Ct. at 2658. At issue in *Thomas* was the propriety of the District of Columbia making a Workers' Compensation award when the Virginia Commission had already made a disability award to the claimant. The Court's analysis identified three different state interests affected by the potential conflict between Virginia and the District of Columbia:

> Virginia has a valid interest in placing a limit on the potential liability of companies that transact business within its borders. Both jurisdictions have a valid interest in the welfare of the injured employee—Virginia because the injury occurred within that State, and the District because the injured party was employed and resided there. And finally, Virginia has an interest in having the integrity of its formal determinations of contested issues respected by other sovereigns.

*Id.* Weighing those interests, the Court concluded that "the ultimate issue ... is whether Virginia's interest in the integrity of its tribunal's determinations forecloses a second proceeding to obtain a supplemental award in the District of Columbia." 448 U.S. at 280, 100 S.Ct. at 2660.[14]

---

**14.** The conflict between the first two interests noted were resolved by the Court's recognition of "the principle that the Full Faith and Credit Clause does not require a State to subordinate its own compensation policies to those of another State...." 448 U.S. at 279, 100 S.Ct. at 2659. Thus, the Court concluded:

> petitioner could have sought a compensation award in the first instance either in Virginia, the State in which the injury occurred ... or in the District of Columbia, where petitioner resided, his employer was principally located, and the employment relation was formed.... And ... compensation could have been sought under either compensation scheme even if one statute or the other purported to confer an exclusive remedy on petitioner. Thus, for all practical purposes, respondent and its insurer would have had to measure their potential liability exposure by the more generous of the two workmen's compensation schemes in any event. It follows that a State's interest in limiting the potential liability of businesses within the State is not of controlling importance.
>
> It is also manifest that the interest in providing adequate compensation to the injured worker would be fully served by the allowance of

Analyzing this ultimate issue, the Court contrasted the "unexceptionable full faith and credit principle that resolutions of factual matters underlying a judgment must be given the same res judicata effect in the forum State as they have in the rendering State", 448 U.S. at 281, 100 S.Ct. at 2661, with the situation before it, where the same set of facts could support an award of compensation under two statutes, *id.*, and concluded that, in the latter, "there is neither inconsistency nor double recovery". *Id.* Therefore, while recognizing that "the factfindings of state administrative tribunals are entitled to the same res judicata effect in the second State as findings by a court," *id.*, it noted that "constitutional rules applicable to court judgments are necessarily [in]applicable to workmen's compensation awards." 448 U.S. at 282, 100 S.Ct. at 2661. While "[f]ull faith and credit must be given to the determination that the Virginia Commission had the authority to make; ... by a parity of reasoning, full faith and credit need not be given to determinations that it had no power to make." *Id.*, 448 U.S. at 282–83, 100 S.Ct. at 2661.

The Court concluded that Virginia's separate interest in placing a ceiling on the potential liability of companies transacting business there was not strong enough to prevent other states with overlapping jurisdiction over particular injuries from giving effect to their more generous compensation policies, whether application was made to that State in the first instance or only after an award had been made in Virginia. 448 U.S. at 284–85, 100 S.Ct. at 2662–63.

Appellants's jurisdictional argument has two parts. First, focusing upon the Supreme Court's statement that "the finding of a state administrative tribunal is entitled to the same *res judicata* effect in a second state as a finding by a court," and noting that "a full range of hearings were held in Virginia on these issues, and the decisions were not

successive awards. In this respect the two jurisdictions share a common interest and there is no danger of significant conflict. 448 U.S. at 279–80, 100 S.Ct. at 2660.

appealed by the claimant," they argue that the Virginia decision is res judicata.[15] Second, appellants rely upon the Court's recognition that "it is for each State to formulate its own policy whether to grant supplemental awards according to its perception of its own interests." 448 U.S. at 285, 100 S.Ct. at 2663. From that premise, citing 4 Larson's Workmen's Compensation Law, § 85.60, pp. 16–42, they argue that a second state's allowance of a supplementary award after the first state has already made an initial award "may subject the employer and carrier to repeated claims in different jurisdictions, protracting litigation and making it impossible for the employer and carrier to know with assurance when a claim has been fully satisfied."

With respect to the former argument, the Supreme Court, as we have seen, in *Thomas*, noted critical differences between a court of general jurisdiction and an administrative agency with limited statutory authority; those differences, it pointed out, make patent that constitutional rules applicable to court judgments are inapplicable to worker's compensation awards. 448 U.S. at 281–82, 100 S.Ct. at 2660–61. In other words, the Court indicated that an administrative agency may make determinations only in areas in which it possesses authority and, "[s]ince it was not requested, and had no authority, to pass on petitioner's rights under District of Columbia law, there can be no constitutional objection to a fresh adjudication of those rights." 448 U.S. at 283, 100 S.Ct. at 2661–62. In short, since the fact finding of the Virginia Commission is not at issue, res judicata simply does not apply.

The Virginia Industrial Commission, finding that a van was not a form of necessary medical treatment or service, determined that it was not within the scope of the Virginia statute; it simply interpreted the Virginia statute rather

---

**15.** This is not jurisdictional in the sense of the power of the court to act, rather it is jurisdictional only in the sense that it may not be proper for the Court to act. *See First Federated Commodity Trust v. Commissioner*, 272 Md. 329, 334, 322 A.2d 539 (1974).

than make findings of fact. With respect to the home modifications issue, the Commission's decision was based upon the fact that the employer had already exceeded the statutory maximum of $10,000.00 and, therefore, was not required to provide further modifications. To the extent that that determination required facts to be found, the facts found were not inconsistent with the findings of the Maryland Commission.

Appellants fare no better with reference to the policy argument. The Court of Appeals, in *Wood v. Aetna Casualty & Surety Company*, 260 Md. 651, 273 A.2d 125 (1971), has already made the policy decision favorable to appellee. In any event, where, as here, the proper result depends upon interpretation of Maryland law, rather than Virginia law, and the Virginia Industrial Commission has interpreted only Virginia law, there is no impediment to this State's commission and courts acting, even if the result reached in Maryland is different than that reached in Virginia.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.