## MARCIA HURT *v.* STILLMAN & DOLAN, INC.

[No. 871, September Term, 1976.]

\* \* \*

## FRANCIS X. BOSSLE, JR. *v.* STILLMAN & DOLAN, INC.

[No. 872, September Term, 1976.]

*Decided April 14, 1977.*

The cause was argued before THOMPSON, LOWE and MELVIN, JJ.

*William T. Glasgow,* for appellants.

*William M. Hesson, Jr.,* with whom were *Nolan, Plumhoff & Williams* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This appeal is from summary judgments entered in the Circuit Court for Howard County, in favor of the appellee, Stillman & Dolan, Inc. and from orders denying motions to strike out the judgments. The appellants, Marcia Hurt and Francis X. Bossle, Jr., contend that the trial court erred because there was a dispute as to material facts.

The appellants are former employees of Stillman & Dolan, Inc., a Maryland corporation, which performs telephone auditing and communication consulting services. Each was employed on a salary plus commission basis. The commissions were paid to the employees when the company collected its fee from the clients for whom the employees had performed the service. At the termination of the appellants' employment, several commissions which were due had not been collected. Suits were filed to collect these commissions.[1] The appellee in its motions for summary judgment attached alleged commission agreement contracts, which stated in the pertinent part that "[c]ommissions for work performed will be payable for a period of ninety days after termination based on cash receipts." These agreements were signed and dated by the appellants.[2] The appellants answered these motions for summary judgment with the general assertion that there was a genuine dispute between the parties over the fact that the alleged contracts had never been put into effect and that there was never any contract or

---

1. By order of the Court of Special Appeals dated December 9, 1976, the two cases were consolidated for appellate purposes.

2. Partial summary judgments were granted in favor of the appellants for commissions on fees which were collected within ninety days of their termination of employment.

agreement that limited the payment of commissions to ninety days from the termination of employment. These allegations were supported by affidavits of the appellants.

The law is well settled that a summary judgment is properly granted under Maryland Rule 610 "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Dietz v. Moore,* 277 Md. 1, 4, 351 A. 2d 428 (1976). "The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not there is an issue of fact to be tried and if there is none, to cause judgment to be rendered accordingly." *Lynx, Inc. v. Ordnance Products,* 273 Md. 1, 7, 327 A. 2d 502 (1974).

In the case at bar we must determine what facts were properly before the court. Neither bare allegations that there is a dispute as to a material fact nor general allegations which do not show facts in detail and with precision are sufficient to prevent the entry of a summary judgment. *Lynx, Inc. v. Ordnance Products, supra* at 7-8. An unsupported conclusion is not the proper way to show an issue of a material fact. *Carter v. Baltimore Gas & Electric Co.,* 25 Md. App. 717, 724, 336 A. 2d 790 (1975).

In *Guerassio v. American Bankers Corp.,* 236 Md. 500, 204 A. 2d 568 (1964), the Court of Appeals stated how facts are to be put before the trial court:

> "Appellee's pleadings and affidavits set out prima facie the elements necessary to entitle it to a summary judgment as a matter of law. Thereupon, appellants were required either to discredit appellee's averments as untrue or to specify evidence which would give rise to a triable issue of material fact. Appellants' pleadings and affidavits do not discredit appellee's averments as untrue. The only issue, therefore, is whether appellants have specified some opposing evidence which would raise a triable issue of material fact. Such evidence must

be indicated to the court in the form of an affidavit or deposition in support of the answer to the motion stating a fact or facts which would negative the appellee's right to a summary judgment. Maryland Rule 610 a 3; *Molesworth v. Schmidt*, 196 Md. 15, 20, 75 A. 2d 100." *Id.* at 503.

The only evidence submitted to defeat the motions for summary judgment were the denials of the appellants that the contract ever came into being. There was no denial that the appellants had signed the agreement, nor was the agreement otherwise explained. The burden was on them, once the appellee had established *prima facie* the necessary elements for a summary judgment, to set forth the facts in support of the dispute. *Hill v. Lewis*, 21 Md. App. 121, 134, 318 A. 2d 850 (1974). This general denial was merely an unsupported conclusion. The reasoning behind this was stated with clarity in *Wyand v. Patterson Agency, Inc.*, 266 Md. 456, 295 A. 2d 773 (1972):

"This is necessary so that summary judgment procedure may retain its vitality. If general statements or bald assertions were sufficient to obtain a summary judgment the rule would serve no useful purpose. *Cf. Tri-State v. Middleman, supra.* Conversely, if a general denial could be relied on to prevent the granting of summary judgment, a motion for such a judgment would be an exercise in futility since it could always be successfully resisted. For these reasons, an affidavit is required, with the expectation that if it is established that no genuine dispute exists as to material facts the expense and delay caused by more extensive litigation can be avoided." *Id.* at 460.

While we feel that the summary judgments were properly entered, the denials of the motions to strike the judgments create a new question. Within thirty days after the trial judge entered the summary judgments, the appellants filed motions to strike out the unenrolled judgments under

Maryland Rule 625 a. To support the motions, they submitted two additional affidavits, one by John Quigley which stated in part as follows:

"I am aware of the claim by Stillman & Dolan, Inc., that there was an agreement to terminate commission 90 days from termination of employment. This is absolutely untrue. There was some limited discussion about changing the method of charging the clients for services rendered. We had used one year contracts. The discussion revolved around 5 year contracts which would increase the employee commission rate by 2 and 1/2 times the former commission rate. However, the 5 year contract arrangement was never accepted by our clients, or Stillman & Dolan, Inc., and the program was never put into effect. That fact was clearly understood by all employees and Stillman & Dolan, Inc.

"Employees were told by Karen Fink that 'there was no change in the commission arrangement; that she never thought this new idea would work and in fact to forget it.' As a former employee I did forget it until Mr. Bossle informed me that Stillman & Dolan, Inc., was now attempting to avoid payment of his commissions and those of Marcia Hurt.

"To express it differently there was never a policy, or a valid contract to limit employees commissions. It was clearly understood that employees would be entitled to all commissions collected on their accounts whenever collected."

The other affidavit by Marcia Hurt stated in part:

"I am aware of the claim by Stillman & Dolan, Inc., the Defendants, that there was an agreement to terminate commissions 90 days from termination of employment. This (is) absolutely untrue. There was some limited discussion about changing the

method of charging clients. Previously clients had executed what was referred to as one year contracts. A new arrangement was to be instituted where clients would enter into 60 month contingency contracts and the sales employee would be entitled to much larger commissions.

"Office procedures were started for this new arrangement, however, the clients resisted it. Karen Fink then informed the employees, including the Plaintiff that 'the 60 month contingency contract would be abandoned, because Stillman & Dolan, Inc., didn't agree to it, 'she' never thought it would work,' and further there would be no change in the commission arrangement. There was never a valid contract in writing executed by the parties in this action. The inducement for me to sign the agreement was the payment of larger commissions and that never materialized. There was no 90 day limitation to commissions as claimed by the defendant; that is false and completely untrue. There was no limitation what so-ever. The matters and facts which I have stated herein are based on my own personal knowledge." [3]

As opposed to the prior affidavits, submitted by the appellants, these affidavits set out specific admissible facts in support of their conclusion that the contract never went into effect. These facts are material and are in direct conflict with the appellee's allegations that a binding contract controls this question. The rule we are to follow in cases involving the vacating of a summary judgment has been set out by the Court of Appeals most clearly in the case of *Brewer v. Mele*, 267 Md. 437, 441, 298 A. 2d 156 (1972):

"In reviewing the granting of the summary judgment itself, we are concerned with whether the trial judge was legally correct. In reviewing the denial of a motion to strike a summary judgment,

---

3. In the Bossle case a similar affidavit was submitted by Bossle.

on the other hand, we are concerned only with whether the trial judge abused his discretion. *Clarke Baridon v. Union Co.*, 218 Md. 480, 147 A. 2d 221 (1958). These are distinct types of decision. The critical question for the trial court vis-a-vis the Leard summary judgment was whether there existed a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. The critical question for the trial court vis-a-vis the Mele motion [to vacate the summary judgment] was whether the appellant had shown a reasonable indication of a meritorious defense to the motion or other equitable circumstances that would justify striking the judgment — that is, whether the court entertained a reasonable doubt that justice had been done in the earlier granting of the summary judgment."

It seems apparent to us, assuming the affidavits to be accurate, there is a reasonable doubt as to whether justice has been done in granting the earlier motions for summary judgment. We think the trial judge abused his discretion in denying the motions to strike the summary judgments.

*Judgments reversed.*
*Cases remanded for new trials.*
*Costs to abide final results.*