584 A.2d 142

**William LONE**

v.

**MONTGOMERY COUNTY, Maryland.**

**Shirley JONES**

v.

**MONTGOMERY COUNTY, Maryland.**

**Nos. 446, 699 and 702, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 21, 1991.

480

Maureen A. Thompson, Silver Spring, for appellants.

Alan M. Wright, Senior Asst. Co. Atty. (Clyde H. Sorrell, Co. Atty., on brief), Rockville, for appellee.

Argued before MOYLAN, FISCHER and CATHELL, JJ.

CATHELL, Judge.

This is a consolidated appeal from three judgments of the Circuit Court for Montgomery County. The appellants, William Lone (No. 446) and Shirley Jones (Nos. 699 and 702), appeal from judgments of default and summary judgment, respectively. The appellee, Montgomery County, moved to dismiss Lone's appeal (No. 446) on the ground that Lone failed to comply with Rule 8–501(c) and (d). On November 15, 1990, we struck the appellants' briefs and appendix, which we found to be in violation of Maryland Rule 8–503(d).[1] The appellants then resubmitted their briefs. We shall now address all three cases.

---

1. Originally, the appellant Jones, in her two cases had adopted the brief of the appellant Lone. Lone's brief, though it apparently contained 30 pages, had affixed to it an appendix composed of four

## FACTS

Ordinance 8–66 was introduced to the Montgomery County Council in May 1977, and was enacted on March 23, 1978.[2] It permitted certain prohibited uses to continue for a ten-year grace period. In the "legislative purpose" section of Ordinance 8–66, the County Council found that up until January 1, 1954, conversions of single-family residences to multi-family uses were encouraged by governmental officials. Many of those prior conversions, although encouraged, violated the pre-existing zoning codes. The 1978 ordinance carefully distinguished between valid nonconformity and unauthorized nonconformity by referring to the former as "legal" nonconforming uses and the latter as merely nonconforming uses.

In essence, the grace period was for the purpose of permitting the continuation of prohibited uses for another ten years, not to phase out legal uses over the ten-year period. Thus, it legitimized for a ten-year period that which would have been otherwise illegal or prohibited. At the end of the ten-year period, those uses lost their legitimization by reason of the same ordinance that legitimized them in the first instance. The owners and their successors were then in the same position they were in before the ordinance was passed. The ordinance created no "vested" right in the traditional property meaning, but a contingent right subject to automatic divestiture at the conclusion of the ten years. To qualify for the ten-year grace period, the owners of eligible homes were required to register their homes with the Montgomery County Department of Environmental Protection to ensure that certain health and safety code provisions were complied with during the grace period. If an

---

volumes and 1097 pages, which we described as a "cornucopian mixture of the material and immaterial."

2. On November 2, 1977, the Takoma Citizens Association filed suit against the County, seeking to enforce the 1928 zoning law. The lawsuit was dismissed, apparently without any determination on the merits, on May 2, 1979.

owner did not register his home then multi-family use terminated as of September 1, 1979.[3] On or about September 1, 1979, the County started to enforce Ordinance 8–66 against all nonregistered dwellings which were in violation of the multi-family/single-family provisions.

In 1980, the County Council enacted Ordinance 9–12 to amend 8–66. It allowed dwellings which were originally built as multi-family to remain so, on a permanent basis.[4] Then, in 1983, the Council enacted Ordinance 10–13, creating a special exception that allowed the maintenance of one "accessory apartment" in nonconforming multi-family homes which were owner occupied.[5]

On March 23, 1988, the ten-year grace period ended, and the County began to enforce Ordinance 8–66 as to those units that had been registered for the grace period. The owners filed a declaratory judgment action in the United States District Court for the District of Maryland, *Nickell v. Montgomery County*, Nos. K–88–824 –902 (D.Md. May 20, 1988), alleging that the ordinance constituted a taking of vested property rights, in violation of the due process and equal protection clauses of the United States Constitution. They also made similar claims in respect to violations of the Maryland Constitution. The trial judge held that the ordinance was valid. He was upheld by the Fourth Circuit on appeal. *Nickell v. Montgomery County*, 878 F.2d 379 (4th

---

3. Although it is not clear, appellants may be asserting that the properties at issue may have been "legal" nonconforming uses under the 1953 Takoma Park Ordinance No. 1166. Our reading of that ordinance indicates that it was a housing ordinance, not a zoning ordinance. By its terms, it expressly did not authorize the violation of zoning regulations.

4. This apparently created a distinction between homes originally built as multi-family and those built as single-family, but subsequently converted to multi-family.

5. This apparently created a further distinction, *i.e.*, a second family use permitted only in a house wherein the owner resided (unless it was originally built as multi-family).

Cir.1989) (unpublished).[6]

Montgomery County then began bringing suits against individual owners under the ordinance, seeking fines and injunctive relief.

## THE LONE CASE

The County initiated this action by filing a complaint for injunctive relief and interrogatories on August 14, 1988. Service was returned *non est*, and the case lay dormant until, after renewal of summons, service was finally obtained on August 14, 1989. Lone filed a Motion to Dismiss alleging lack of jurisdiction on September 28, 1989. The next day, the County filed a Motion for Order of Default alleging a failure to answer. Lone's Motion to Dismiss was denied on October 12, 1989; he then filed his Answer on October 24, 1989. The County withdrew its Motion for Default Judgment 6 days later.

The County thereafter filed a Motion for Sanctions pursuant to Md. Rule 2–433 [7] on December 22, 1989, stating as grounds Lone's failure to file timely answers to interrogatories. On January 12, 1990, more than 15 days after the filing of the motion and with no response having been filed thereto, the court entered a default judgment in the form of an Order for Sanctions and granted the injunctive relief requested by the County in its complaint. On February 1, Lone untimely filed an Opposition to the Motion for Sanctions and, on February 2, filed a Motion to Set Aside the Default Judgment. Lone's Motion to Set Aside the Default Judgment was denied on February 15, 1990, and on March 13, the court entered its Order for Injunction.

On appeal, Lone presents this question:

---

6. The case caption of the federal case, among the 35 plus plaintiffs, identifies a William Lane not a William Lone. We presume that William Lane and this William Lone are the same.

7. Pursuant to Md. Rule 2–311(b), a response was due within 15 days, and "[i]f a party fails to file a response ... the court may proceed to rule on the motion."

Is it an abuse of discretion for the trial judge to grant a default motion against a defendant who, having filed a preliminary motion pursuant to Rule 2–322, and being entitled to the automatic extension contained in Rule 2–321(c) and Rule 2–421(b), fails to answer interrogatories in a timely manner because he has no notice of the disposition of his preliminary motion?

Our review of the trial judge's dismissal of the case is under the abuse of discretion standard. Discretion is "a reasoned decision based on the weighing of various alternatives." *Judge v. R and T Construction Co.*, 68 Md.App. 57, 60, 509 A.2d 1236 (1986), *aff'd after remand*, 82 Md.App. 700, 573 A.2d 96, *cert. granted*, 321 Md. 46, 580 A.2d 1066 (1990). When a court must exercise discretion, failure to do so is usually reversible error. *Maus v. State*, 311 Md. 85, 108, 532 A.2d 1066 (1987). Even when the ultimate penalty of entry of a default judgment is invoked, it cannot be disturbed on appeal without a clear showing of abuse of discretion. *Klein v. Weiss*, 284 Md. 36, 56, 395 A.2d 126 (1978); *Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880 (1972); *Berkson v. Berryman*, 63 Md.App. 134, 142, 492 A.2d 338, *cert. denied*, 304 Md. 296, 498 A.2d 1183 (1985).

Maryland Rule 2–321 states that "[a] party shall file an answer to an original complaint ... within 30 days after being served, except.... [w]hen a motion is filed pursuant to Rule 2–322 [such as Lone's Motion to Dismiss alleging lack of jurisdiction], the time for filing an answer is extended without special order to 15 days after entry of the court's order on the motion...." Rule 2–421(b) contains an analogous provision concerning interrogatories: "The party to whom the interrogatories are directed shall file a response within 30 days after service of the interrogatories or within 15 days after the date on which that party's initial

pleading or motion is required, whichever is later." [8]

Lone was thus required to file an answer or preliminary motion by September 15, 1989. He did not comply. He failed to file anything until he filed his Motion to Dismiss on September 28, 1989. He was at that time in violation of the time constraints of the Maryland Rules. The appellee, however, withdrew its first Motion for Default Judgment when Lone belatedly filed his answer in October. A denial of Lone's motion was entered on October 12, 1989. Appellant's answers to interrogatories were thus due approximately October 27. Lone admits that his answers to the interrogatories were untimely, as they were not filed until February 2, 1990, but blames the clerk's office, arguing that he never received notice of the court's disposition of the Motion to Dismiss.[9] We hold that the trial judge did not abuse his discretion when he imposed the "ultimate sanction" upon Lone. As he is allowed to do, he assigned little weight to the appellant's unsupported explanation for the failure to file timely. Absent any proof of mistake on the part of the clerk's office, a likely explanation for the appellant's lapse is dilatory conduct, which may properly result in sanctions.

At the time the court imposed sanctions for failure to respond to interrogatories, the appellant's dilatoriness in pleading had been the subject of a prior Motion for Default Judgment in respect to the failure to answer (which motion

---

**8.** Rule 1–201(a) provides that "[w]hen a rule, by the word 'shall' ... mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute." A possible consequence for failure to provide discovery is entry of a judgment of default. *See Golub v. Spivey,* 70 Md.App. 147, 520 A.2d 394 (1987).

**9.** Throughout the proceedings in these consolidated cases, counsel for appellants continues to assert that she failed to receive notice of various pleadings and orders. We note in the present instance, she had to have had notice that her motion to dismiss had been denied, because she answered the complaint within 15 days of the court's order. The lower court apparently placed little credence on appellants' claim of lack of notice of the various matters. Under the circumstances of this case, neither do we. *See* footnote 23 *infra.*

had been withdrawn). Additionally, appellant had not responded to interrogatories as he was required to do, nor had he even responded to the Motion for Sanctions for failure to answer interrogatories after that motion was filed.

■ Assuming, arguendo, that the appellant did not receive service, we note that the language of Md. Rule 2–321 places the burden on the litigants to check the docket as the clock begins to run upon entry of the court's order disposing of the motion, not when service is made. Even if the judge were to have accepted the validity of Lone's lack of notice argument, which he did not, he nevertheless could have imposed sanctions for failure to comply.

As discussed supra, we cannot hold that it was an improper exercise of the trial judge's discretion for him to have rendered the default judgment.

### THE JONES CASES

Shirley Jones is a property owner in Takoma Park and the appellant in two cases, Nos. 699 and 702, which involve injunctions issued pursuant to Motions for Summary Judgment filed by Montgomery County. In response to the County's complaints seeking injunctive relief, Jones filed answers which stated legal objections, but did not deny any of the factual allegations. In Case No. 699, no response was filed to the County's motion for summary judgment; in Case No. 702, Jones filed an Opposition and Cross–Motion for Summary Judgment. After a simultaneous oral argument in both cases, the County's motions for summary judgment were granted.

The hearing transcript shows that there were essentially two issues before the the trial court in considering the summary judgment of the appellee: whether *Nickell v. Montgomery County, Maryland, supra,* (hereinafter "Fourth Circuit case"), was res judicata, or binding authority, and whether the appellant's claim under the Maryland

Constitution [10] had any merits to survive summary judgment.[11]

The appellant's briefs are identical in each case. She presents this issue:

Does a federal court opinion which dismisses what it characterizes as "pendent state law claims" (and the federal appellate decision affirming that dismissal) without prejudice and with advice to assert those claims in a state forum preclude Mrs. Jones from asserting those dismissed claims in this case?

For the following reasons, we shall hold that the federal district court case which decided the constitutionality of Ordinance 8–66 under the federal Constitution was not res judicata as to the subsequent litigation in a Maryland court on the Maryland constitutional issues, and the Fourth Circuit case which affirmed that decision is not binding authority for Maryland courts construing the Maryland Constitution. We explain.

The Fourth Circuit Case: *Nickell v. Montgomery Co.*

That case was an appeal from the decision of the United States District Court for the District of Maryland (Kaufman, J.), *Nickell v. Montgomery Co., Maryland,* No. 88–824–K (D.Md. June 20, 1989), which entered summary judgment against this same appellant on the issues concerning violations under the Fair Housing Act,[12] and the equal

---

**10.** The appellant, according to the transcript, alleged claims under Article 3, Section 40 of the Maryland Constitution, and equal protection and due process claims under Article 24 of the Maryland Declaration of Rights (there is a misprint in the transcript, which shows Article 23 of the Maryland Declaration of Rights, instead of Article 24).

**11.** The appellee, on appeal, argues that the doctrine of res judicata is an absolute bar to the appellant's equal protection and taking claims because the Fourth Circuit case, in which the appellant Jones was a party, already adjudicated those same issues.

**12.** Fair Housing Act, 42 U.S.C.A. §§ 3601, *et seq.* (West 1977 & Supp. 1989).

protection and the due process, *i.e.*, taking without just compensation, clauses of the federal Constitution.[13] Those same three issues were on appeal before the Fourth Circuit. The Fourth Circuit affirmed on all three issues. We shall briefly discuss the reasoning process of that court.[14]

The Fourth Circuit held that Ordinance 8–66 had a rational basis for its enactment. In so holding, it reasoned that, quoting from *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974) and citing *Agins v. City of Tiburon*, 447 U.S. 255, 261–62 & n. 8, 100 S.Ct. 2138, 2141–42 & n. 8, 65 L.Ed.2d 106 (1980), "creating a 'quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs.' " *Nickell* at 6 (878 F.2d 379 [Table]). Furthermore, it went on to state that Ordinance 8–66 was enacted merely to "reinforce the 1928 and 1954 laws, and did not make any uses of appellant landlords' property unlawful that were not prohibited by the earlier zoning laws," and that this was also a rational basis. It then held that because there was a rational basis for enacting Ordinance 8–66, the district court properly granted summary judgment on the equal protection claim.

On the issue of "taking," the court, quoting *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141 (citations omitted), stated that a zoning regulation may effect an unconstitutional taking if it "does not substantially advance legitimate state interests, or denies an owner economically viable use of his land." *Nickell* at 7. It then held that Ordinance 8–66 advances legitimate state interests, and that it preserved to the owner an economically viable use of the land. It pointed out that although Ordinance 8–66 prohibits the use of the

---

**13.** The district court, however, did not decide those same issues, *i.e.*, "pendant state claims," under the Maryland Constitution, and dismissed those claims without prejudice.

**14.** We shall not discuss the Fourth Circuit's reasoning under the Fair Housing Act, as it does not relate to the appellant's Maryland constitutional claims.

buildings as multi-family rental units, it does not require the landlords to expend the necessary funds to reconvert their houses into one-dwelling structures. Because the appellants in that case failed to raise a genuine issue of material fact, by not producing evidence regarding the value of those buildings prior to the enactment of the Ordinance and the value of those buildings today, had the Ordinance not been enacted, the Fourth Circuit held that the district court properly entered summary judgment on the taking issue as well.

On the issue of taking, the court further stated that "unconstitutional taking does not occur if [there is] a reasonable grace period, which amounts to reasonable compensation." In support, the court discussed *Major Media of the Southeast, Inc. v. City of Raleigh,* 792 F.2d 1269, 1273–74 (4th Cir.1986), *cert. denied,* 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), which held that a 5½ year amortization period, *i.e.,* "grace period," was sufficient to allow the recoupment of the investment on outlawed billboard signs, which, presumably, would have little residual value. The court held that the houses in Takoma Park retain significant value as single-family dwellings, and that the ten-year amortization period allowed by the Ordinance was reasonable compensation for future diminution of rental income resulting from the termination of multi-family use.

## Res Judicata

Res judicata bars a cause of action previously asserted in a prior suit and any cause that, with propriety, might have been asserted in the former suit. *Ellett v. Giant Food Inc.,* 66 Md.App. 695, 505 A.2d 888 (1986). In general, the Court of Appeals, in *Nicholson v. Unsatisfied Claim and Judgment Fund Board,* 265 Md. 453, 458, 290 A.2d 384 (1972), outlined three questions to be asked in order for there to be a successful application of this doctrine:

1. Is the issue presented in the current action identical to the one determined in the prior adjudication?

2. Are the parties in the present litigation the same or in privity with the parties to the earlier dispute?

3. Was there a final judgment on the merits in the initial action?

If the answer to all three questions is in the affirmative, then res judicata may be properly invoked to bar the second litigation. *Id.*

 In order to determine whether the issue presented in the current action is identical to the one determined in the prior adjudication, Maryland has adopted the "same evidence test." *MPC, Inc. v. Kenny,* 279 Md. 29, 367 A.2d 486 (1977). Under that test, if the same evidentiary facts would sustain both an earlier and later action, then the two causes of action are the same for the purpose of res judicata. *Scott v. Prince George's County Dept. of Social Services,* 76 Md.App. 357, 545 A.2d 81, *cert. denied,* 314 Md. 193, 550 A.2d 381 *cert. denied,* —— U.S. ——, 109 S.Ct. 3226, 106 L.Ed.2d 575 (1988); *Century I Condominium Ass'n, Inc., v. Plaza Condominium Joint Venture,* 64 Md.App. 107, 494 A.2d 713 (1985); *Jack v. Foster Branch Homeowner's Ass'n No. 1, Inc.,* 53 Md.App. 325, 452 A.2d 1306 (1982); *Annapolis Urban Renewal Authority v. Interlink, Inc.,* 43 Md.App. 286, 405 A.2d 313 (1979); *World Wide Imported Car Co., Ltd. v. Savings Bank of Baltimore,* 41 Md.App. 263, 396 A.2d 547 (1979). Furthermore, a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion. *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 525 A.2d 232 (1987); *Whitaker v. Whitaker,* 60 Md.App. 695, 484 A.2d 314 *cert. denied,* 302 Md. 682, 490 A.2d 719 (1984).

██ In the case sub judice, the trial court below ruled that the Fourth Circuit case did not bar the instant action based upon Maryland constitutional provisions under the doctrine of res judicata. It stated:

But, the fact of the matter is that the constitutionality of the Maryland provisions has not been tested yet. She has raised the Federal Constitutional issues, and they are

disposed of, as far as I am concerned. They are the compelling reason why I am going to grant you summary judgment now.

But, the finality of the issue of the Maryland provisions simply is not there.

The Court of Appeals, in *Pat Perusse Realty v. Lingo*, 249 Md. 33, 45, 238 A.2d 100 (1968), stated the public policy behind the doctrine of res judicata:

> Public policy against repetitive identical litigation, which underlies the rule of res judicata, applies here with logic and force to provide that Perusse's rights were satisfied by having had its day in court on an issue, and that it is not entitled to another day in court against a particular defendant on that issue.

*See also MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (1977) (citing the same quote); *see generally Allen v. Kaplan*, 255 Md. 409, 258 A.2d 211 (1969).

We first note that the appellant in the case at bar did not have her day in court with respect to the constitutionality of Ordinance 8–66 under the Maryland Constitution. The federal district court, although it had "pendent jurisdiction" [15] over Maryland constitutional law issues, dismissed those claims without prejudice. In *Ellett v. Giant Food Inc.*, *supra*, we said res judicata bars causes of action previously asserted and causes of action that with *propriety might have been asserted in a former suit.* Indeed, the appellant in the case at bar did ask the federal district court to consider the Maryland constitutional law claims, which with all propriety, the federal court might have considered under its pendent jurisdiction. The federal district court, however, dismissed the Maryland constitutional law issues without prejudice because: "[the court] think[s] in the interest

---

**15.** "Pendent jurisdiction pertains to the concept whereby a federal district court, in the exercise of jurisdiction over a federal law claim properly before it, may also, in its discretion, proceed to extend jurisdiction over a related state law claim where both claims arise from a common nucleus of operative facts." *Black's Law Dictionary* 1134 (6th ed. 1990). See also cases cited therein.

of judicial economy, [that] fairness, and convenience are well served by letting any claims that the Plaintiff wants to assert, be asserted in the State Court." It was no fault of the appellant that the Maryland constitutional issues were not litigated in the first federal suit. Accordingly, the rationale of res judicata would not be applicable to the case at bar. Furthermore, we said in *Annapolis Urban Renewal v. Interlink, Inc.*, 43 Md.App. 286, 289, 405 A.2d 313 (1979), that a "dismissal without prejudice is not, of course, an adjudication on the merits." (Footnote omitted.) Thus, the third element of the res judicata test is not met as to the Maryland constitutional law claims.

Second, while Maryland courts have sometimes stated that Article 24 of the Declaration of Rights is in pari materia to the Fourteenth Amendment, they have on occasions distinguished the two. *Hornbeck v. Somerset County Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983) (the equal protection clause of the Fourteenth Amendment and the concept of equal treatment embodied in Article 24 are in pari materia and generally apply in like manner and to the same extent; nevertheless, the two provisions are independent of each other so that a violation of one is not necessarily a violation of the other); *Aero Motors, Inc. v. Administrator, Motor Vehicle Administration*, 274 Md. 567, 337 A.2d 685 (1975) (although Article 24 has long "been equated" with the due process clause of the Fourteenth Amendment by judicial construction and application, the two provisions are not synonymous); *Smallwood v. State*, 51 Md. App. 463, 443 A.2d 1003 (1982) ("law of the land" has not been held to be "synonymous" with "due process of law."). Accordingly, this would necessarily mean that the "same evidence test" of res judicata would not be applicable, *i.e.,* the same evidence to support the violation of the Fourteenth Amendment of the U.S. Constitution may or may not necessarily support the violation of Article 24 of the Maryland Declaration of Rights. When the trial judge opined that "the finality ... of the Maryland provisions simply is not there," he was correct.

For these reasons, we hold that the doctrine of res judicata does not bar a subsequent suit in a Maryland court, alleging violation of Maryland Constitutional provisions, when the same parties had maintained a prior federal suit in which only federal constitutional issues were decided, and the federal court expressly deferred state constitutional questions to the state court.

■ As to the issue of whether the Fourth Circuit opinion is mandatory authority in a Maryland court, we shall hold that it is not. The Court of Appeals, in footnote 10 of *Pope v. State*, 284 Md. 309, 320, 396 A.2d 1054 (1979), stated: "unlike decisions of the Supreme Court of the United States, decisions of federal circuit courts of appeals construing the federal constitution and acts of the Congress pursuant thereto, are not binding upon us." (Citations omitted.) Even if the Supreme Court of the United States rendered a decision interpreting the equal protection clause of the federal constitution, it is not mandatory authority for Maryland courts construing Maryland constitutional issues. It may well serve, though, as very persuasive authority in cases involving equal protection issues under Article 24 of the Maryland Declaration of Rights. *Hornbeck v. Somerset County Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983). Maryland courts have said that Supreme Court decisions on the Fourteenth Amendment are "practically direct authorities." *Bureau of Mines v. George's Creek Coal & Land Co.*, 272 Md. 143, 321 A.2d 748 (1974); *Lawrence v. State*, 51 Md.App. 575, 444 A.2d 478 (1982), *aff'd*, 295 Md. 557, 457 A.2d 1127 (1983). We shall next discuss whether Ordinance 8–66 amounts to unconstitutional "taking" under the Maryland Constitution.

The Law of "Taking" and Zoning in Maryland

■ We shall first begin our discussion with the concept of "taking" within the context of zoning. Zoning is an exercise of the police power and, to be valid, must be in the general public interest for promotion of health, safety or general welfare of the community. *County Comm'rs of*

*Queen Anne's County v. Miles*, 246 Md. 355, 228 A.2d 450 (1967). It is an exercise of the police power which takes away, for public good, some rights of individuals to use their property as they please while giving them rights to restrict injurious uses of others' property. *Mayor and City Council of Baltimore v. Byrd*, 191 Md. 632, 62 A.2d 588 (1949). As valid as it may be under the police power, however, it has long been established that a zoning ordinance, which permanently restricts the use of property so extensively that it cannot be used for any reasonable purpose and goes beyond permissible regulation, must be regarded as a taking of property without compensation. *Congressional School of Aeronautics, Inc. v. State Roads Commission*, 218 Md. 236, 146 A.2d 558 (1958); *Marino v. City of Baltimore*, 215 Md. 206, 137 A.2d 198 (1955); *Walker v. Board of County Comm'rs of Talbot County*, 208 Md. 72, 116 A.2d 393 *cert. denied*, 350 U.S. 902, 76 S.Ct. 180, 100 L.Ed. 792 (1955); *City of Baltimore v. Cohn*, 204 Md. 523, 105 A.2d 482 (1954). As such, zoning cannot be used as a substitute for eminent domain proceedings so as to defeat or circumvent the constitutional requirement for the payment of just compensation. *Congressional School of Aeronautics, Inc. v. State Roads Commission*, 218 Md. 236, 146 A.2d 558 (1958). Furthermore, "the State cannot, under the guise of the police power, take private property for public use without compensating the owner." *Stevens v. City of Salisbury*, 240 Md. 556, 564, 214 A.2d 775 (1965). (Citing *Capital Transit Co. v. Bosley*, 191 Md. 502, 62 A.2d 267 (1948)). The Court of Appeals, however, has noted that constitutional proscriptions against the taking of private property for public use without just compensation were not intended to restrain the reasonable exercise of the police power. *Stevens v. City of Salisbury*, 240 Md. 556, 564, 214 A.2d 775 (1965) (citing *American Coal Co. v. Allegany Co.*, 128 Md. 564, 98 A. 143 (1910)).

Accordingly, the Court of Appeals, in *City of Salisbury*, 240 Md. at 567, 214 A.2d 775, said: "It is an accurate statement to say that every restriction upon the use and

**496**

enjoyment of property is a 'taking' to the extent of such restriction; but every 'taking' is not a 'taking' in a constitutional sense for which compensation need be paid." (Citation omitted.) *See also Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Allied American Mutual Fire Insurance Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 150 A.2d 421 (1959). Having discussed the overall scheme of "taking" and zoning, we shall next discuss the law of amortization of nonconforming uses.[16]

■ An owner of land may establish a "lawful nonconforming use" if the evidence conclusively establishes that before and at the time of the adoption of the original zoning ordinance, he was using substantially all of his tract of land in a then-lawful manner for a use which by a later legislative action became nonpermitted. *Board of Zoning Appeals of Howard County v. Meyer*, 207 Md. 389, 114 A.2d 626 (1955). More recently, this Court in *McKemy v. Baltimore County*, 39 Md.App. 257, 385 A.2d 96 (1978), enumerated factors to be considered in deciding whether a particular current activity is within the scope of a nonconforming use:

(1) to what extent does the current use of these lots reflect the nature and purpose of the original non-conforming use;

(2) is the current use merely a different manner of utilizing the original non-conforming use or does it constitute a use different in character, nature, and kind;

(3) does the current use have a substantially different effect upon the neighborhood;

---

16. The ordinance at issue attempted to distinguish between semi-permanent, *i.e.*, until destroyed or abandoned, nonconforming uses, and the phase out nonconformity at issue by describing the former as legal nonconformity and the latter as nonconformacy. For the purpose of these cases, however, we perceive little difference. "[A] rose [b]y any other word would smell as sweet." Romeo and Juliet, Act II, Scene II, 43–44.

(4) is the current use a "drastic enlargement or extension" of the original non-conforming use.

*Id.* at 269–70, 385 A.2d 96. (Footnote omitted.)

Even if a certain use of a property may be a lawful nonconforming use, the Court of Appeals has repeatedly recognized that "one of the fundamental problems of zoning is the inability to eliminate incompatible nonconforming land uses." *County Council of Prince George's County v. E.L. Gardner, Inc.*, 293 Md. 259, 267, 443 A.2d 114 (1982). Specifically, the Court of Appeals in *E.L. Gardner, supra,* at 267, 443 A.2d 114, said: "[s]uch nonconforming uses pose a formidable threat to the success of zoning. They limit the effectiveness of land use controls, contribute to urban blight, imperil the success of the community plan, and injure property values."[17] (Citation omitted.) *See also Grant v. Mayor and City Council of Baltimore,* 212 Md. 301, 129 A.2d 363 (1957). The Court in *E.L. Gardner,* 293 Md. at 268, 443 A.2d 114, further discussed the role of local ordinances and regulations on nonconforming uses. The Court said:

Whether a nonconforming use can be changed, extended, enlarged, altered, repaired, restored, or recommenced after abandonment ordinarily is governed by the provisions of the applicable local ordinances and regulations. These local ordinances and regulations must be strictly construed in order to effectuate the purpose of eliminating nonconforming uses. [Citations omitted.]

The Court then held that the processing facility constituted a change in the existing nonconforming use, which was prohibited by the zoning ordinance.

More recently, the policy against a nonconforming use exceeding its bounds was succinctly stated by this Court in *National Insts. of Health Fed. Credit Union v. Hawk,* 47 Md.App. 189, 422 A.2d 55 (1980). There, we said: "Maryland case law permits continuing a non-conforming use, but

---

**17.** The nonconforming use in *E.L. Gardner* was a surface mining sand and gravel operation.

does not permit the transmogrification of an approved nonconforming use into a new and different use. The latter constitutes an unlawful extension, even if there is no outward change in the appearance of the facility being used." *Id.* at 200, 422 A.2d 55. (Citation omitted.) We then held that changing a scientific society headquarters into a credit union was such a "transmogrification" of the prior nonconforming use. *See also Wilson v. Mayor & Comm'rs of Town of Elkton,* 35 Md.App. 417, 371 A.2d 443 (1977) (basic premise underlying zoning regulations is to restrict rather than expand nonconforming uses).

Eventually the law began to recognize the feasibility of amortization as a means of eliminating nonconforming uses. The constitutionality of terminating nonconforming uses by amortization, after a reasonable and appropriate specified time, has long been established in Maryland. Most of the Maryland cases that have dealt with amortization of nonconforming uses have been in the context of billboards and junk yards. The Court of Appeals in *Grant v. City of Baltimore,* 212 Md. 301, 129 A.2d 363 (1957), specifically held that an amortization period of five years to remove nonconforming billboards was valid, and that a five-year period was not an arbitrary time period. Twenty years later, the Court of Appeals, in *Donnelly Advertising Corp. of Maryland v. Mayor and City Council of Baltimore,* 279 Md. 660, 370 A.2d 1127 (1977), again confirmed the validity of such a mechanism in phasing-out nonconforming billboards. *See also Eutaw Enterprises v. Baltimore City,* 241 Md. 686, 217 A.2d 348 (1966); *Gough v. Board of Zoning Appeals for Calvert County,* 21 Md.App. 697, 321 A.2d 315 (1977).

The Court of Appeals in *Grant, supra,* stated the rationale of such a mechanism under the constitutional scheme:

[The] constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss.

\* \* \* \* \* \*

There is no difference in kind, either, between limitations that prevent the adding to or extension of a nonconforming use, or provisions that the right to the use is lost if abandoned or if the structure devoted to the use is destroyed, or the denial of a right to substitute a new use for the old, all of which are common if not universal in zoning laws and all of which are established as constitutional and valid, on the one hand, and a requirement, on the other, that an existing nonconformance must cease after a reasonable time. The significance and effect of difference in degree in any given case depends on circumstances, environment and length of the period allowed for amortization.

*Grant,* 212 Md. at 315–16, 129 A.2d 363. Furthermore, the Court of Appeals in *Stevens v. City of Salisbury,* 240 Md. 556, 570–71, 214 A.2d 775 (1965), stated:

True amortization provisions almost if not universally call for a termination of non-conforming uses after the lapse of a reasonable, specified period in order that the owner may amortize his investment (the reasonableness of the period depends upon the nature of the non-conforming use, the structures thereon, and the investment therein). . . .

The Court of Appeals has applied the same rationale in phasing-out nonconforming junk yards in *Shifflett v. Baltimore City,* 247 Md. 151, 230 A.2d 310 (1967). In *Shifflett,* owners of junk yards in Baltimore County attacked the constitutionality of a county ordinance which required the elimination of junk yards in all residential zones of the county within two years. The Court did not decide the reasonableness of the two-year grace period, because the appellants in that case had four and a half years from the effective date of the ordinance to remove the automobiles in their junk yards, which the Court held was not unreasonable.[18]

---

**18.** The *Shifflett* Court reviewed other "junk yard cases" from other jurisdictions, which were in accord with its holding. *E.g., Spurgeon v.*

■■■ Applying the law to the facts of this case, we must determine whether a ten-year amortization period, in which owners of nonconforming multi-family housing must change multi-family use to single-family use, is reasonable. We hold that the ten-year amortization period in the case at bar is reasonable because within that time, the multi-family housing owners could recoup any lost investment values, *i.e.*, rental incomes. We further stress the point that the homes, as single-family structures, still retain significant economic value. Being able to retain the physical structure

---

*Board of Comm'rs of Shawnee County*, 181 Kan. 1008, 317 P.2d 798 (1957); *McKinney v. Riley*, 105 N.H. 249, 197 A.2d 218 (1964); *Harbison v. City of Buffalo*, 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42 (1958); *Town of Schroeppel v. Spector*, 43 Misc.2d 290, 251 N.Y.S.2d 233 (1963). *But see, City of Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (1953) (holding invalid an ordinance which prohibited the nonconforming use of a junk yard after one year); *City of Corpus Christi v. Allen*, 152 Tex. 137, 254 S.W.2d 759 (1953).

In addition, we have reviewed amortization cases from several other jurisdictions. *City of Los Angeles v. Gage*, 127 Cal.App.2d 442, 274 P.2d 34 (1954) (a five-year amortization period terminating a wholesale and retail plumbing business use); *Board of Supervisors of Cerro Gardo County v. Miller*, 170 N.W.2d 358 (Iowa 1969) (a five-year amortization of automobile wrecking business); *Wolf v. City of Omaha*, 177 Neb. 545, 129 N.W.2d 501 (1964) (seven-year amortization re dog kennels); *City of University Park v. Benners*, 485 S.W.2d 773 (Tex.1972), *appeal dismissed*, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973) (twenty-five-year amortization to terminate all commercial uses); *White v. City of Dallas*, 517 S.W.2d 344 (Tex.Civ.App.1974) (one-year amortization for car wrecking yard). For other cases upholding the prevailing view that reasonable amortization techniques are valid exercises of the police power, *see Standard Oil Co. v. City of Tallahassee*, 183 F.2d 410 (5th Cir.), *cert. denied*, 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647 (1950) (gas filling station); *National Advertising Company v. County of Monterey*, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33, *appeal dismissed*, 398 U.S. 946, 90 S.Ct. 1869, 26 L.Ed.2d 286 (1970); *Village of Gurnee v. Miller*, 69 Ill.App.2d 248, 215 N.E.2d 829 (1966); *Tachapell v. Town of Goffstown*, 107 N.H. 485, 225 A.2d 624 (1967); *Harbison v. City of Buffalo*, 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42 (1958); *Naegele Outdoor Advertising Company of Minnesota v. Village of Minnetonka*, 281 Minn. 492, 162 N.W.2d 206 (1968); *City of Seattle v. Martin*, 54 Wash.2d 541, 342 P.2d 602 (1959). *But see Village of Oak Park v. Gordon*, 32 Ill.2d 295, 205 N.E.2d 464 (1965); *James v. City of Greenville*, 227 S.C. 565, 88 S.E.2d 661 (1955).

of the house under the Ordinance, without any required physical change, is one such retention of value. Furthermore, should the house owners desire, they could still rent out the homes as single-family dwellings, in which case, they might continue to receive significant rental income. It is true that they may earn less profit than they would have made from a multi-family rental unit; however, as the Court of Appeals in *Shifflett*, 247 Md. at 162, 230 A.2d 310, said, such a factor is not, of itself, a controlling consideration. *See also, Grant*, 212 Md. at 322, 129 A.2d 363; *City of Baltimore v. Borinsky*, 239 Md. 611, 622, 212 A.2d 508 (1965), and cases cited in *Borinsky*. Economically viable uses for these home investments remain.

We said in *Gough*, 21 Md.App. at 706, 321 A.2d 315 (adopting the rationale of *Stevens v. City of Salisbury, supra*) that "Whether applicable to junkyards, marinas or commercial parking lots, such an ordinance is not arbitrary and unconstitutional on its face if it reveals a reasonable relationship between the *nature* of the non-conforming uses to which it applies and the period of amortization." (Emphasis in original.) This is the general rule: Regardless of whether the nature of the nonconforming use is commercial or residential, as long as the constitutionally reasonable relationship between the amortization period and the nature of the nonconforming use is present, the ordinance providing for such amortization will be constitutional. We hold that Ordinance 8–66 does not violate any Maryland constitutional provisions.[19]

---

**19.** We note again that at the time of the enactment period, the type of uses at issue here may have already been nonconforming or prohibited since the enactment of the 1928 and 1954 ordinances. Some of the uses created subsequent to the early ordinance, while encouraged, may well have been technically illegal at their inception. Thus, in many instances, the nonconformity has existed for considerably longer than the amortization period of ten years. It is unclear exactly how long the properties subject to the instant cases have been nonconforming, and/or prohibited; the record appears to indicate that the

### Legislative Purpose of Ordinance 8–66

▉▉▉ The second issue at the summary judgment hearing below was whether Montgomery County is acting contrary to the legislative purpose of Ordinance 8–66 as contained in , its Section 59–194A. Specifically, at the trial level the appellant quoted the following from Section 59–194A(a) of the Ordinance:

> Further, the County Council finds that the date of January 1, 1954 represents the demarcation ending the period of encouragement and endorsement by government officials for conversion of single family residences to multi-family residential uses and that owners who converted prior to that date did so under color of law and should be held harmless.

The appellant argued below that the enactment of the Ordinance requiring the phase-out period of ten years is "not simply inconsistent with, but is contrary to and repugnant" to the above stated legislative purpose. We disagree.

▉▉▉▉▉ According to the law of statutory construction, the intention of the legislature must be sought in the first instance in the actual language of the statute. *Mauzey v. Hornbeck*, 285 Md. 84, 400 A.2d 1091 (1979); *Board of Supervisors of Election of Baltimore City v. Weiss*, 217 Md. 133, 141 A.2d 734 (1958); *Kimbrough v. Giant Food, Inc.*, 26 Md.App. 640, 339 A.2d 688 (1975). Furthermore, where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself.

---

multi-family use was created by prior owners. The parties have used the term amortization. We have adopted that phraseology and made legal determinations based upon that concept because that was the way the issues were presented below and on appeal. While we uphold the amortization concept presented to us, we perceive that what was presented and decided as an amortization may well not have been accurate if the properties had not been in "legal" nonconformity prior to the enactment of the statutes. If they were not "legal" we can perceive a difference in a ten-year grace period to terminate an illegal use and a ten-year amortization period to terminate a legal use. The federal court in *Nickell* also alluded to this distinction.

*Giant of Md., Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 298 A.2d 427, *appeal dismissed,* 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968). *But see Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987).

We have examined the language of Ordinance 8–66, and hold that it is free from ambiguity. Even if we were to look at the legislative purpose, we find no ambiguity nor inconsistency in the Ordinance. Immediately after the legislative purpose provisions the appellant cited to the circuit court below is the following continuation of the purpose language:

> The Council also recognizes that enactment of this text amendment requiring phase-out of all post–1954 conversions and phase-out no later than 10 years from the effective date of this text amendment of pre–1954 conversions, may create practical difficulties or unusual hardships. It is the Council's intention to develop and consider a legislative mechanism such as a special exception or use variance for those properties so affected to be considered for continuation.

This legislative purpose clearly envisions the ten-year phase-out plan. There is no inconsistency between the legislative purpose and the operative portions of the Ordinance. Having discussed the law, we shall next address the entry of summary judgments in cases 699 and 702.

The Standard of Review of Summary Judgment

Maryland Rule 2–501(e) provides that:

> The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

In reviewing a grant of summary judgment, we must first determine whether a dispute of material fact exists. *Arnold Developer, Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949 (1990). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* at 261, 567 A.2d 949 (quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). Where the facts are susceptible to more than one permissible inference, the choice between inferences should be made by the trier of fact, and should not be resolved on a motion for summary judgment. *Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 401 A.2d 1013 (1979), *aff'd*, 291 Md. 241, 434 A.2d 564 (1981); *Miller v. Nissen Corp.*, 83 Md.App. 448, 458, 575 A.2d 758 (1990); *Barb v. Wallace*, 45 Md.App. 271, 412 A.2d 1314 (1980). When a determination is made as to whether a factual dispute exists, all inferences must be resolved against the moving party, even if the underlying facts are disputed. *Berkey v. Delia*, 287 Md. 302, 413 A.2d 170 (1980); *Maloney v. Carling Nat'l Breweries, Inc.*, 52 Md. App. 556, 451 A.2d 343 (1982).

## NO. 699

The Complaint alleged that Jones, the record owner of a certain property, violated the Montgomery County Code by utilizing multi-family uses in a single-family zone. It further alleged that Jones had been notified of the violation, and that the violation was continuing. The County therefore sought an order enjoining this nonconforming use. Jones' Answer contained legal defenses only; none of the factual allegations were denied. The County, in its Memorandum in Support of Motion for Summary Judgment, argued that under Md. Rule 2–323(e), those allegations are considered as admitted. Additionally, the County attached an affidavit of a zoning inspector which stated general facts regarding the nondiscriminatory execution of the inspection program. Jones failed to file any opposition to the County's motion, and after oral argument, Judge Messitte granted summary judgment for the County.

The only facts in evidence were those alleged in the County's complaint which were not denied by the appellant's answer, the facts contained in the zoning inspector's affidavit, and the facts stated in the appellant's answers to interrogatories.[20] The correct way for a party opposing a motion for summary judgment supported by affidavit to establish a genuine dispute as to a material fact is by producing affidavits under oath containing factual assertions based on the affiant's personal knowledge, giving a deposition, or answering interrogatories. *Diffendal v. Kash and Karry Service Corp.*, 74 Md.App. 170, 180–181, 536 A.2d 1175 (1988); *Lowman v. Consolidated Rail Corp.*, 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied*, 307 Md. 406, 514 A.2d 24 (1986). Jones did none of those except the latter, and her answers to the interrogatories comport with the facts alleged in the complaint.

The trial court at that point was faced with undisputed facts to which it was required to apply the law. We have heretofore discussed the law, and when the trial judge granted the Motion for Summary Judgment, he correctly found that the Ordinance was constitutional and that there was no unconstitutional "taking" of property, *i.e.*, that the amortization period was sufficient. As we have indicated, *supra*, we hold that he was correct. We perceive no error in the granting of the appellee's Motion for Summary Judgment in Case No. 699.

## NO. 702

 In this case, according to the appellee's brief, appellant Jones did file an Opposition and Cross–Motion for Summary Judgment in response to the summary judgment motion filed by the appellee; however, the record extract

---

**20.** We are not required to go outside the extract. We have chosen to do so in Case No. 699 in order to conclude this matter. We have not chosen to do so in case 702, and note that the issues are sufficiently similar that no further purpose would be served by re-addressing them in that case.

does not include appellant's opposition and motion.[21]

Maryland Rule 8–501(a) specifically provides that it is the duty of the appellant to prepare and file a record extract, and Rule 8–501(c) provides, in pertinent part, that: "The record extract shall contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal." The Court of Appeals has made it absolutely clear that this is "a mandatory requirement." *Federal Armored Express, Inc. v. Public Service Commission of Maryland*, 273 Md. 231, 242, 328 A.2d 264 (1974); *Caroline v. Reicher*, 269 Md. 125, 137, 304 A.2d 831 (1973); *A.S. Abell Co. v. Skeen*, 265 Md. 53, 59, 288 A.2d 596 (1972); *Basiliko v. Royal Nat'l Bank*, 263 Md. 545, 549, 284 A.2d 227 (1971); *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 617, 261 A.2d 475 (1970); *Naughton v. Paul Jones & Co.*, 190 Md. 599, 604, 59 A.2d 496 (1948).

In the summary judgment context, the Court of Appeals in *A.S. Abell Co., supra,* was faced with a similar situation as in the case at bar. In that case, the appellant appealed from a denial of a summary judgment,[22] and included in the record extract only its motion for summary judgment and supporting affidavit, omitting other pleadings including the opposing party's motions. The Court then stated: "In essence, Abell is asking us to consider only one side of the proverbial coin—its own—in deciding whether this motion was improperly denied. We can not oblige. To deny this Court the information it needs to properly determine the question is to effectively prevent us from reviewing the propriety of the trial court's decision." *A.S. Abell Co.*, 265 Md. at 58, 288 A.2d 596.

----

**21.** At oral argument, appellants' counsel, after first asserting that pleadings for No. 702 had been filed in No. 699, conceded that she had failed to file the pertinent pleadings for No. 702 in either appeal.

**22.** That case dealt with a denial of a summary judgment by the trial court, in which the reviewing court is only concerned with whether the trial court abused its discretion. *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972); *Hurt v. Stillman & Dolan, Inc.,* 35 Md.App. 644, 371 A.2d 1137 (1977).

In the case at bar, the appellant not only failed to include her own Opposition and Cross–Motion for Summary Judgment in the extract, but other relevant and material pleadings we need to determine whether the trial judge was correct in entering summary judgment.

We cannot, therefore, effectively hold that the trial judge was incorrect. Having extensively reviewed the law and what was before us, we believe that the trial judge was correct. Moreover, we note that appellant Jones, on appeal, has filed virtually identical briefs in each of her appeals. Our review of the record indicates that, as to the Jones's cases, appellant's counsel utilized similar, if not identical, pleadings at the trial court. The summary judgment matters in both cases were argued in one hearing as one argument. While we cannot determine the content of her Opposition and Cross Motion for Summary Judgment, had it merely restated the same matters and legal arguments raised in her answer and interrogatories in No. 699, the holdings we have heretofore rendered in case 699 would have applied as well in case No. 702.

## Conclusion

It was not an abuse of discretion for the circuit court to enter a default judgment in Lone's case No. 644. The trial judge correctly entered summary judgment against the appellant Jones in case No. 699, as there was no dispute of material fact, and the County was entitled to a judgment as a matter of law. We affirm the entry of summary judgment against the appellant Jones in case No. 702, as she failed to present on appeal relevant and material documents that may have been before the trial court with respect to the summary judgment motion.[23]

---

**23.** The way in which the matter was presented on appeal constituted a procedural morass. Appellant Jones first attempted to adopt the brief of appellant Lone. At that point, both of appellant Jones' cases had minimal record extracts. By adopting Lone's brief, Jones adopted his appendix as her own in each of her cases. That appendix was 1097 pages long and was excessively engorged with inappropriate matter.

**508**

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY THE APPELLANTS.

Additionally, when we attempted to reference the appendix, the referenced pagination was at best confusing. When we were able to find the referenced page, it often failed to contain the referenced matter. Furthermore, over 150 pages of newspaper articles, reproduced in the negative, were difficult to read.

In the beginning of this appeal, due to the serious deficiencies in the appellants' appellate pleadings, we had struck appellants' briefs *sua sponte*, giving appellants ten days to refile proper briefs, holding in abeyance our decision on appellee's Motion to Dismiss the Appeal in case No. 446. We have chosen to address the issues raised. Although we have addressed the issues, it should not be presumed that we consider appellants' refiled briefs to have been "proper." Because we have addressed the issues and affirmed the trial court, we deny appellee's Motion to Dismiss the appeal in Case No. 446.